THOMAS T. CHURCH, Appellant, v. THE LA FAYETTE FIRE INSURANCE COMPANY OF BROOKLYN, Respondent.

In an action upon an alleged contract of fire insurance, plaintiff's evidence tended to show that he had insured with defendant for many years, and had been in the habit of getting policies without paying premiums at the time. That plaintiff called upon defendant's secretary September 6, 1871, in reference to insurance upon a hotel on which defendant then had a policy, and endeavored to get it insured at a less rate. The agent answered that he would insure it at the old rate, no less. To which plaintiff replied, "very well, I must have it insured." The defendant made out a policy the next day, dating it the sixth. On the ninth, plaintiff called and asked the secretary if he had taken the building. That officer replied that he had, at the old price. On October sixteenth, plaintiff again called to get insurance on other property, and told a clerk of defendant's (the secretary not being in) that he had another policy, and would pay for both together. The clerk replied, "very well." The hotel was burned November seventh. Plaintiff called the next day, informed the secretary of the loss, and offered to pay for the two policies, but the secretary refused to accept payment for the policy in suit, claiming defendant not to be liable, because the house was vacant. A few days thereafter, plaintiff paid the premium on the second policy from its date, which was accepted. The policy in suit contained a clause that the company would not be liable until the premium was paid. *Held*, that the evidence was sufficient to require the submission to the jury of the question whether a credit was not intended to be given, and this condition waived; and that a nonsuit was error.

(Argued April 25, 1876; decided May 23, 1876.)

APPEAL from judgment of the General Term of the City Court of Brooklyn affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiff upon trial.

This action was upon an alleged contract of fire insurance. Plaintiff's evidence was in substance that he was the owner of a hotel at Coney Island which for three years successively, prior to September 6, 1871, had been insured by defendant. Plaintiff had dealt with defendant a good many years, and he testified that he had been in the habit of getting policies without paying for them; that he

never paid for a policy at the time. On the day specified he called at defendant's office, for the purpose of getting the hotel insured for the coming year, when he saw Mr. Hunt, defendant's secretary, whom he tried to pursuade to insure it at a less rate, but that Hunt told him he could not take it at any less; that he would take it at the old rate, but no less, to which plaintiff replied, " very well I must have it insured," and left. On the seventh a policy was made out, insuring the property from the sixth. It contained the usual clause. " This company shall not be liable by virtue of this policy or any renewal thereof, until the premium thereof be actually paid." It was the custom of defendant to register policies as issued and this policy was regularly entered in the policy register, as a one-year policy, expiring September 6, 1872. On the ninth plaintiff called and asked Hunt if he had taken the hotel. He replied, " yes, I have taken it at the old price." On the sixteenth October, plaintiff called at defendant's office, to get some insurance upon other property owned by him. Hunt was not in, he left a memorandum with the clerk, saying : " I have another policy and I will pay for the two together." The clerk replied, " very well." The other policy was made out. On the 7th of November, 1871, the hotel was burned, on the eighth, plaintiff called and asked Mr. Hunt for the two policies, which he produced, plaintiff told him the hotel was burned the night before, Hunt took the policy, examined it, asked if. the place was occupied, plaintiff replied " no," Hunt then said, " well, then, we are not liable," and he indorsed upon the policy, " notified of the premises being vacant and also of its being burned, G. W. Hunt secretary." Plaintiff offered to pay for the two policies, but Hunt refused to take any thing except upon the other policy. About the middle of November, plaintiff took and paid for the other policy which insured him from October twenty-first. The court nonsuited the plaintiff, to which plaintiff's counsel duly accepted.

*Nathaniel C. Moak* for the appellant. A parol agreement to insure binds the company to do so and to issue a policy,

although no policy has in fact been written out or delivered. (*Train* v. *H. P. Ins. Co.*, 1 N. Y. W. Dig., 249; *Bunten* v. *Orient, etc.*, 8 Bosw., 448; 1 Abb. Ct. App. Dec., 257; *Sun, etc.*, v. *Davis*, 3 Robt., 254; 19 Abb. Pr., 214; 56 Mo., 153–157; May on Ins., § 44; *Angell* v. *Hartf. Ins. Co.*, 59 N. Y., 171; *Trustees, etc.*, v. *Trustees, etc.*, 19 id., 305; *Ellis* v. *Albany City F. Ins. Co.*, 50 id., 402; *Audubon* v. *Ex. Ins. Co.*, 27 id., 216; *Hotchkiss* v. *Ger. Ins. Co.*, 5 Hun, 90; *Carpenter* v. *Mut. Ins. Co.*, 4 Sandf. Ch., 408; *Post* v. *Ætna Ins. Co.*, 43 Barb., 352; *Whitaker* v. *Farmers' Ins. Co.*, 29 id., 312; *Rhodes* v. *Railway. Ins. Co.*, 5 Lans., 71; *Perkins* v. *Wash. Ins. Co.*, 4 Cow., 645; *Kelly* v. *Comm. Ins. Co.*, 10 Bosw., 82; *Leeds* v. *Mech. Ins. Co.*, 8 N. Y., 351; *Bidwell* v. *Astor Ins. Co.*, 16 id., 263.) If the insurer has waived payment of the premium at the prescribed time, it may be paid after loss. (*Howell* v. *Knick., etc.*, 44 N. Y., 277; *Worden* v. *Guardn., etc.*, 7 J. & S., 317; *Chase* v. *Hamilton, etc.*, 22 Barb., 527; *Martin* v. *Internl.*, 53 N. Y., 339; *Leslie* v *Knick., etc.*, N. Y. W. Dig., 232; 2 Hun, 616; *Fried* v. *Royal, etc.*, 47 Barb., 128.) Payment of the premium at the time of making the contract of insurance was not necessary to make it binding. (*Angell* v. *Hartf., etc.*, 59 N. Y., 171; *Bohen* v. *Wimburgh, etc.*, 35 id., 131; *Sheldon* v. *Atl., etc.*, 26 id., 460; *Wood* v. *Pough., etc.*, 32 id., 619; *Pratt* v. *N. Y., etc.*, 55 id., 505; *Hotchkiss* v. *Ger., etc.*, 5 Hun, 90; *Shear* v. *Phœnix*, 4 id., 800; *Dean* v. *Ætna, etc.*, 2 id., 358; *Carroll* v. *Charter Oak*, 40 Barb., 292; 1 Abb. Ct. App. Dec., 316; *Van Allen* v. *Farmers', etc.*, 4 Hun, 413; *Parker* v. *Arctic, etc.*, 1 T. & C., 397; 59 N. Y., 1; *Goit* v. *Nat. Pro., etc.*, 25 Barb, 189; *Pitney* v. *G. F. Ins. Co.*, 61 id, 335.) An agreement to give credit could be established by or inferred from the circumstances surrounding the transaction. (*Bodine* v. *Ex. Ins. Co.*, 51 N. Y., 117; 35 id., 131; *Bowman* v. *Ag. Ins. Co.*, 59 id., 521; 25 Barb., 189; *Smith* v. *Gergirty*, 4 id., 615; *Meehan* v. *Williams*, 2 Daly, 367; *Mayor, etc.*, v. *Butler*, 1 Barb., 325; *Decker* v. *Judson*, 16 N. Y., 443; May on Ins., 434; *Kolgers* v. *Guard. Ins. Co.*, 10 Abb. Pr. [N. S.], 176;

*Buckbee* v. *U. S. Ins. Co.*, 18 Barb., 541; *Helm* v. *Phila. Ins. Co.*, 61 Penn. St., 107; *Staunton* v. *W. As. Co.*, 21 Grant Ch. [Up. Can.], 578; *Bodine* v. *Ex. Ins. Co.*, 51 N. Y., 117; *Ecl. Ins. Co.* v. *Fahrenkrug*, 68 Ills., 463; *Hale* v. *Steel*, id., 231.) The case should have been submitted to the jury. (22 N. Y., 413; 24 id., 40; *Johnson* v. *Hathorn*, 2 Abb. Ct. App. Dec., 465; *Mizner* v. *Kussell*, 29 Mich., 229; *Post* v. *Ætna Ins. Co.*, 43 Barb., 351; *Pitney* v. *G. F. Ins. Co.*, 61 id., 336.)

*Philip S. Crooke* for the respondent. There was no sufficient evidence to establish that a credit was given, and there was nothing for the jury to pass upon. (*Bradley* v. *Potomac Ins. Co.*, 3 Am. R., 121; *Algeo* v. *Duncan*, 24 How. Pr., 210; 39 N. Y., 313; *McDonald* v. *Walter*, 40 id., 551.)

MILLER, J. The question to be determined in this case, is whether there was evidence upon the trial to submit to the jury to show a waiver of the condition in the policy, that the company should not be liable until the premium was actually paid. We think that there was such evidence, and that the court erred in refusing to submit the case to the jury and in granting a nonsuit. The payment of the premium at the time of making the contract of insurance is not necessary to bind the company, and if a credit be given by the agent it is equally obligatory (*Angell* v. *Hartford Ins. Co.*, 59 N. Y., 171), and the agent may waive such condition and give such credit. (*Boehen* v. *Williamsburgh Ins. Co.*, 35 N. Y., 131; *Sheldon* v. *Atl. F. and M. Ins. Co.*, 26 N. Y., 460.) There was evidence upon the trial which showed a prior dealing of the plaintiff with the company for many years, and that he was in the habit of getting policies without paying for them at the time. This was a circumstance to be considered, although by no means controling on the question as to the intention of the agent to waive the payment. The fact, however, that on a single occasion credit was given for the premium, as was proved, is to be considered upon the question of waiver. (*Bowman* v. *Agri-*

*cultural Ins. Co.*, 59 N. Y., 521; see also 26 N. Y., *supra*, pp. 465, 466.) It also further appears from the testimony that the plaintiff on the 6th of September, 1871, called at the company's office to get the property insured for the ensuing year, saw the secretary, and tried to prevail upon him to reduce the old rate, which he declined to do, and the plaintiff then replied, "very well, I must have it insured." The next day afterwards the defendant made out the policy to the plaintiff, by which it insured the plaintiff from the sixth of September. On the ninth the plaintiff called again and asked the secretary if he had taken the building, and he replied that he had, at the old price. No objection was interposed to this and no further conversation took place. It, perhaps, was a fair question, whether, taken in connection with what had previously been said by the plaintiff, that he must have it insured, it might not be inferred that the plaintiff assented to this. Subsequently, on the sixteenth of October, the plaintiff again called for the purpose of obtaining an insurance upon other property. The secretary was not in, but the plaintiff then stated to the clerk that he had another policy, evidently referring to the one upon which this action is brought, and would pay for the two together, and the clerk replied, "very well," thus apparently assenting to the arrangement. The plaintiff did not call again until November eighth, after the fire, which took place on the seventh of November. The plaintiff informed the secretary of the loss and offered to pay for the two policies, but he refused to take any thing on the policy in suit, stating they were not liable because the house was not occupied, and he paid neither, leaving both. A few days subsequently he paid the premium on the second policy from its original date, which was accepted, thus conceding that this policy was valid.

Under the circumstances presented, although the testimony is not entirely conclusive and satisfactory, we think there was sufficient evidence to leave to the consideration of the jury the question whether a credit was not intended to be given and payment at the time waived.

As already seen, there was some evidence that plaintiff

assented to the old rate of premiums, at which he was informed the insurance had been taken, and it was a question to be determined whether, if the secretary intended to demand payment before the policy took effect, he should not have so said, and was not bound to speak. His failure to do so might, perhaps, bear the interpretation that he assented to a credit being given as had been the case on a previous occasion and as was given in the second policy. Besides, when plaintiff advised the secretary of the fire, no objection was made that the premium had not been paid, but a liability was repudiated on another and entirely a different ground — a want of occupancy. Some inference may also be derived from the circumstance that the secretary conceded that the company were liable on the second policy from date without payment or delivery, but this is not very material.

Considering all the circumstances and the previous dealings between the parties, we are of the opinion that it could not be held, as a matter of law, that there was no waiver of the payment of the premium according to the condition of the policy and no credit for the amount thereof given to the insured, and the court having committed an error in withholding the case from the jury and in granting the nonsuit, the judgment must be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.