John B. Burr et al., Respondents, *v.* The American Spiral Spring Butt Company, Appellant.

The parties entered into a contract, which recited that plaintiffs were about to publish a book of the industries of the United States, which would be "sold by subscription through their authorized agents in every State in the Union and in Canada." Plaintiffs agreed to publish in said book an advertisement of defendant's business, and defendant agreed to pay therefor a sum specified "for each and every copy of said work sold." Upon the trial of an action to recover the compensation so agreed to be paid, plaintiffs proved that they were engaged in publishing books and selling them by subscription; that they had agents appointed in every State and in Canada who canvassed for subscribers, then ordered the number of books required to fill subscriptions and paid

for them, and the books were shipped directly to the agents who delivered them, plaintiffs having no personal connection with or knowledge of the individual subscribers except through the agents. Plaintiffs gave evidence sufficient to show *prima facie* that the book in question was published and sold in this way and that they had delivered to their agents and been paid for the number of books for which they claimed to charge defendant, including those delivered as payment for advertising. There was proof of actual delivery to subscribers, in a few cases, but no proof of actual sales by subscription in every State. The referee found that the proof was not sufficient to show a compliance with the contract and gave judgment for the defendant. *Held*, error; that there was nothing in the contract importing an intent to make the right to recover any compensation dependent upon selling the books in every State; also, that assuming the contract required the books to be sold by subscription, the proofs established a sale by subscription within the meaning of the contract; but that even if actual delivery to subscribers was necessary to be proved, as the delivery of some was proved, the judgment was erroneous.

(Argued April 13, 1880; decided June 1, 1880.)

Appeal from order of General Term of the Supreme Court, in the second judicial department, reversing a judgment in favor of defendant entered upon the report of a referee. (Reported below, 17 Hun, 188.)

This action was brought upon a contract between the parties, the material portions whereof, as well as the pertinent facts proved, are set forth in the opinion.

The referee found that the parties entered into the contract, that plaintiffs published the book described, with the article therein stipulated for in said contract, but that plaintiffs failed to show " that said book had been sold through their authorized agents in every State in the Union and in Canada," nor have they shown that any number of said books had been sold by subscription through their authorized agents.

*Benj. Estes* for appellant. Plaintiffs were bound to prove the number of books sold and delivered by them by subscription and could only recover on the books so sold. (*Bleeker* v. *Johnson*, 69 N. Y. 309; *Shaw* v. *Davis*, 55 Barb. 389–398; *Walsh* v. *Trevanion*, 15 Q. B. 733–751.) The General Term

erred in treating the construction of the contract as solely one of law. (2 Parsons on Contracts [5th ed.], 492, 493, and notes; *White* v. *Hoyt,* 73 N. Y. 505, 512; *Phillips* v. *Gallant,* 62 id. 264, 265; *Levy* v. *Burgess,* 64 id. 397.)

*S. E. Church* for respondents. Plaintiffs were not bound in order to recover to prove the actual subscriptions or to show the actual delivery of the books to subscribers. (*Burr* v. *Compton,* 116 Mass. 493–504; 20 Wend. 72; 2 Hill, 531.)

*Per Curiam.*\* The agreement between the parties provided for publishing, in a book to be called "The great Industries of the United States," an advertisement of the defendant's business, at a compensation measured by the number of books sold. It recited that the plaintiffs were about to publish such a book, which would be sold by subscription through their authorized agents in every State in the Union and in Canada; that in the work was to be inserted an article containing six pages of reading matter setting forth the name, "biography," and·business of the defendant, and then followed the agreement proper as follows: "Now, therefore, in consideration of said Burr & Co. so incorporating in said article, to the acceptance of said company, the name of said company, their 'biography,' etc., and publishing the same in the forthcoming edition of the said work, said company agree to pay to said Burr & Co. the sum of two cents for six pages of the said article for each and every copy of said work sold by said Burr & Co. Said Burr & Co. agree to furnish to said company their certificate, properly subscribed and certified to before a justice of the peace if so required, as to the number of copies of said work actually sold and delivered to subscribers."

The plaintiffs, whose business was publishing and selling books by subscription, proved their mode of conducting it; that agents were appointed in the various States and in Canada who canvassed for subscribers, and who then ordered the num-

---

\* This was the last opinion written by the late Chief Judge CHURCH, it having been completed by him the morning of the day of his death. It was read, and adopted by the court.— REP.

ber of books required for delivery to subscribers and paid for them, and the books were shipped by express or freight directly to the agents who delivered the books to the subscribers, the plaintiffs having no personal connection with and no knowledge of the individual subscribers except through the agents. They gave evidence tending to prove, and sufficient, we think, to prove *prima facie* that this book was published and sold in this way, and that they had actually delivered to their agents and been paid for the number for which they claimed to charge the defendants, including the number delivered to editors and publishers of newspapers as compensation for advertising, etc. Except to a very limited extent there was no proof of actual delivery to individual subscribers. The learned referee found that the proof was not sufficient to show a compliance with the contract on the part of the plaintiffs, and we infer from the findings that he held that it was incumbent upon the plaintiffs to prove a sale by subscription through agents in every State in the Union, and in Canada, to entitle the plaintiffs to recover any thing. This cannot be sustained. It appeared in evidence that at the time the contract was made the plaintiffs had agents in every State, and in Canada, engaged for them in selling other books by subscription, and this recital must be regarded in the nature of a proposition as to the mode of doing the business. There is nothing in the contract importing an absolute agreement that the plaintiffs would sell the book in every State, and such a construction would be very unreasonable. The failure to sell in a single State would deprive the plaintiffs of all compensation, while the agreement is that the defendant is to pay only for the number actually sold at the rate of two cents a copy. Recitals in a contract are not strictly any part of the contract, but they may have a material influence in construing the instrument and determining the intent of the parties. There is no principle of construction which would justify a court in holding that the parties intended to make a right to recover any compensation dependent upon selling the books in every State in the Union.

If the compensation had been fixed at a gross sum, it might

have been claimed that the consideration implied a sale in all the specified places; but as the defendant limited its liability to a specified sum for each book sold, the plaintiffs were entitled to recover for the number proved to have been sold in accordance with the contract, whether more or less. We infer, also, that the learned referee decided that the proof was insufficient, because it did not go far enough to establish an actual sale and delivery to the individual subscribers which, it is claimed, is indispensable to a sale by subscription. This presents the most important question in the case. It will be observed that the obligatory part of the contract does not require the books to be sold by subscription, in express terms, but it is claimed, and with considerable reason, that as the preamble recites that the books are to be sold by subscription, the agreement fixing the price at two cents for each copy *sold* should be construed as implying sold by subscription, and that this construction is confirmed, because the defendant presumably regarded this as the most effectual way of advertising its business. Assuming that the contract, fairly construed, required the books to be sold by subscription, it is insisted by the plaintiffs that the parties must be deemed to have contracted with reference to the mode of doing that business by the plaintiffs, and that the recitals, although requiring the books to be sold by subscription, qualified such sales to the mode which the plaintiffs had adopted, and were then practicing, and that the proof showed, that the books were delivered to their agents in that mode, and were actually paid for. The contention of the plaintiff is sustained by *Burr* v. *Crompton* (and three other cases) reported in 116 Mass. 493. These cases were actions upon similar contracts, and in one or two of them upon contracts identical with the contract in the case at bar for compensation for advertising in the same book, and the evidence was substantially the same as that given in this case. The court held it sufficient to entitle the plaintiff to recover. Devens, J., in delivering the opinion, said: " As from the mode in which the business was to be conducted, according to the evidence of the plaintiffs, the defendants must have known that the publisher

was not brought into immediate contact with the subscriber, and did not deliver the book to him personally, the books of account kept by the plaintiffs with such agents, and the recollection of witnesses as refreshed by them (which evidence was admitted by the auditor), were competent to prove a business conducted according to the usage of the trade, the transmission of the books in answer to orders on them by agents, and the payment therefor, which would justify a finding for the plaintiffs. Although this evidence fails to show directly that the books were delivered into the hands of the individual subscribers, it is the only evidence which is reasonable and practicable in ascertaining the liability of the defendants. As between them and the plaintiffs, it should be considered that there has been a sale and delivery of the books, when the plaintiffs prove that they have done every thing to place them in the hands of individual subscribers, which the contract contemplated that the publisher should do.''

It is urged that the form of the question in those cases and in this is different. There it was held that the evidence was sufficient to justify a verdict for the plaintiffs, while here it is required to hold that the referee erred in not finding that the proof was sufficient. If the case showed that the referee decided, or might properly have done so upon conflicting evidence, or upon the credibility of witnesses, we could not disturb the finding, as the General Term reversed the judgment upon questions of law, but the principal facts were substantially undisputed, and whether such facts were sufficient to establish a sale of books by subscription, within the meaning of the contract, is a question of law.

The orders from agents in pursuance of previous correspondence, and the shipping of the books to such agents, and receiving payment therefor, showed the course of business. There was no evidence of bad faith. The counsel for defendant argued that the referee might have inferred bad faith. This is based upon the allegation that the plaintiffs would have realized a large profit upon the books from the compensation paid by the advertisers alone, and if none had been sold, and by the

refusal of the plaintiffs to produce upon the trial certain books and papers. The answer to this is, that in the first place no such defense is set up in the answer, and the referee denied the application of the defendant to amend the answer in this respect. Again it was not proved that the amount received from the advertisers would pay for the expense of publishing the books, and give a profit. One item only of expense was proved, and the referee refused to allow the cost of the work to be shown, nor was it shown how much was received from the advertisers. As to the production of books and papers, the plaintiffs in the first instance offered many of their books and papers, including letters from agents, etc. These were objected to by the defendant, and in several cases rejected by the referee. Afterward the defendant called for various papers, which were not produced. How much of this should be imputed to a desire to suppress the truth, and how much to the tactics of the respective counsel at the trial it is unnecessary to determine. It does not establish a fraudulent disposition of the books to deceive the defendant.

But aside from this question, the decision of the General Term granting a new trial must be affirmed, on the ground that at all events the referee erred in finding that there was no proof that any books had been sold by subscription, even if an actual delivery to subscribers was necessary. Several of the witnesses speak of having knowledge of the delivery of some books, and one witness testified that he delivered personally 104 books to actual subscribers. The answer admits substantially that some books were delivered to subscribers, but denies on information and belief that over five thousand were so sold and delivered. The plaintiffs were, therefore, clearly entitled to a judgment for some amount, which would be sufficient to justify the reversal of the judgment, and a granting of a new trial.

The order of the General Term should be affirmed, and judgment absolute ordered for the plaintiffs.

All concur.

Order affirmed and judgment accordingly.