THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* R. PORTER LEE et al., Appellants.

While the liability of a guarantor is *strictissimi juris*, and cannot be extended beyond the plain and explicit language of his contract, yet such contract is subject to the same rules of construction as other contracts; it is to be enforced according to the meaning and intent, and in the manner designed by the parties at the time of its execution. Effect must be given to all of the language of the contract, and a meaning and effect ascribed to each word and phrase used therein, if it can be done without violating the plain intent.

Where it clearly appears by a guaranty that it was intended to embrace past as well as future transactions, such an effect will be given to it.

A bank had been for a series of years annually appointed a depository of the State for canal tolls, and had annually executed and delivered to the State a contract, guaranteed by some of its directors in their individual character. Each guaranty recited the designation of the the bank, and its contract to receive and account for the tolls, and the guarantors covenanted jointly and severally that the bank would faith fully perform its contract, account for and pay over all moneys deposited with it, and also " account for and pay over all moneys now on deposit in said bank, or due or to become due therefrom to the people " In an action upon a guaranty so given, *held*, the guarantors were bound for the continuing security of the deposit existing at the time, and so, they were liable for the whole balance due from the bank to the State at the beginning of the year, as well as for subsequent deposits.

Also *held*, that it was not competent for defendants to allege ignorance of the existence, at the time of the execution of the guaranty, of a debt

so expressly provided for, or that they had been misled by an omission of their principal to notify them of its existence.

It was claimed by defendants that they were released by the acceptance of a new contract and guaranty for the next year. No evidence of actual approval or acceptance was given. It appeared that a few days after the receipt, by the auditor, of the new guaranty, during which time he was diligently engaged in inquiring into the responsibility of the persons proposed as sureties, and had received no satisfactory informa- tion, the bank failed. *Held*, that under the circumstances no acceptance could properly be inferred; and that a finding that there was no acceptance was justified.

(Argued January 27, 1887 · decided March 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made the 4th Tuesday of January, 1885, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought upon two guaranties, given in 1880 and 1881 to the State, by the First National Bank of Buffalo, to secure deposits of canal tolls.

The guarantees were alike, save in the name of sureties and dates. The defendants executed both. Each was also executed by one person, who did not sign the other. Of the body of the guaranty of 1881 (omitting the names), the following is a copy:

" *Whereas*, The canal board has designated the First National Bank of Buffalo to receive a part of the deposits of canal tolls collected at Buffalo, N. Y., and the said First National Bank has agreed to receive and account for the same, on the terms and conditions expressed in its contract hereto annexed, bear- ing even date herewith: Now, therefore, in consideration of the tolls to be deposited in said bank, and of one dollar to us, * * * in hand paid by the said people of the State of New York, we jointly and severally covenant, promise and agree with the people of the State of New York, that said bank shall well and faithfully do and perform all things con- tained in said contract, on its part to be done or performed, and shall well and faithfully account for and pay over all moneys deposited with it, or for which it shall in any way

become liable, in and by said contract, according to the terms and provisions thereof, and that said bank shall account for, and pay over all moneys now in deposit in said bank, or due, or to become due therefrom, to the people of the State of New York."

*Eugene H. Lewis* for appellants. It is sufficient in order to obtain relief that either party should have entered into a contract under a mistake. Relief will be granted in both cases, but where the mistake is mutual, the remedy is by correction of the contract; where it is unilateral, the remedy is by rescission of it. (Bispham Prin. of Eq., § 189; Pomeroy's Eq. Jur., § 839, note.) Even negligence itself will not operate as a bar to equitable relief in such cases. (Pomeroy's Eq. Jur. § 856; *Kelley* v. *Solari*, 9 M. & W. 54; *Lucas* v *Worswick*, 1 M. & R. 293; *Townsend* v. *Crowdy*, 8 C. B. [N. S.] 477; *Barber* v. *Brown*, 1 id. 121; *Dails* v. *Floyd*, 12 Ad. & L. [N. S.] 531; *Bell* v. *Gardiner*, 4 M. & Gr 11; *Evans* v. *Llewellyn*, 2 Brown's Ch. 150; *Bingham* v. *Bingham*, 1 Ves. Sen. 126; *Broughton* v. *Hutt*, 3 De G. & Jones, 501; *Smith* v. *Mackin*, 4 Lans. 41; *Allen* v. *Mayor*, *etc.*, 4 E. D. Smith, 404; *Waite* v. *Leggett*, 8 Cow. 195; *Union Bk.* v. *Sixth Nat. Bk.*, 43 N. Y. 452; *Duncan* v. *Berlin*, 46 id. 685; *Lawrence* v. *Am. Nat. Bk.*, 54 id. 211; *Mayer* v. *Mayer*, 63 id. 455; *Paine* v. *Upton*, 87 id. 327; *Wilson* v. *Randall*, 7 Hun, 15; 67 N. Y. 338.) The sureties upon the guaranties in suit did not become liable for any indebtedness of the bank to the plaintiff beyond that arising from deposits of canal tolls, made during the current years in which the guaranties were respectively given. (*Arlington* v. *Merricke*, 4 Saund. 411; *Liverpool Water-Works* v. *Atkinson*, 6 East. 507; *The Wardens* v. *Bostock*, 2 Bos. & Pul. N. R. 175; *Pearsall* v. *Summersett*, 4 Taunt. 593, 599; *Haswell* v. *Long*, 2 M. & S. 363; *Napier* v. *Bruce*, 8 Cl. & Fin. 470; *Tradesman's Bk.* v. *Woodward*, Anthon's N. P., 300; Hurlstone on Bonds, 33; *Corp. of London Ass'n* v. *Bold*, 6 Ad. & Ell. [N. S.] 514; ——— v. *Webb*, 6 Ired.

[N. C.] 57; *Nat. B'king Ass'n* v. *Conkling*, 90 N. Y. 116; *Mayor, etc.* v. *Kelley*, 98 id. 476.) It was not, in fact, the intention of the parties that the sureties should become bound for deposits made in preceding years. (*U. S.* v. *Eckfords Exr's*, 1 How [U. S.] 250; Brandt on Suretyship, §§ 139, 140; *Kingston Mut. Ins. Co.* v. *Clark*, 33 Barb. 196.) The obligation of the guaranty is printed, the recital is in writing and the written part should prevail. (1 Wait's Act. & Def. 27, 127; 4 id. 21; *Delonguemare* v. *Tradesmen's Ins. Co.*, 2 Hall, 622.) In cases where the rights and liabilities of different sets of sureties intervene, the strict rule of the earlier English decisions has been departed from in New York and other States, and the courts will do equity both to sureties and creditors. (*Seymour* v *Van Slyck*, 8 Wend. 420; *People* v. *Cushing*, 36 Hun, 483.) The referee erred in refusing to find that the bond and guaranty of 1882 were accepted by the plaintiff. (*Postmaster-General* v. *Norvell*, Gilpin, 106; *Seymour* v. *Van Slyck*, 8 Wend. 414; 1 Par. on Cont. [7th ed.] 480.) It was not necessary for the auditor to notify either the bank or the sureties upon the guaranty of 1882 of his acceptance of the guaranty before it took effect as a legal obligation. (Brandt on Suretyship and Guaranty, § 164; Wade on Notice, §§ 403, 404, *Douglas* v *Howland*, 24 Wend. 35; *Davis* v. *Wells*, 104 U. S. 159.)

*Denis O'Brien*, attorney-general, for appellant. The defendants are liable on each bond, not only on the amount deposited during the year, but for the balance on hand at the time each bond was executed, in case of a failure of the bank to account for and pay over the same. (Brandt on Suretyship, 194, § 138; id. 204, § 145; *Mayor, etc.* v. *Wright*, 16 Add. & Ell. [N. S] 623; *Dedham Bk.* v. *Chickering*, 3 Pick. 335; *Bk. of B. N. Am.* v. *Cuvillier*, 14 Moore's P. C. Cas. 187; *Thompson* v. *Roberts*, 17 Ir. L. R. 490; *Worcester Bk.* v *Reed*, 9 Mass. 267; *Evans* v. *Earl*, 1 Hurl. & Gur. 1.) The relation of debtor and creditor existed between the bank and the State. There was no application by either party of the

payments made, and under such circumstances, if payments be made upon the account, the law will apply them upon the oldest item. (*Union Bk.* v *Tutt*, 5 Mo. App. 342; *Ward* v. *Johnson*, 95 Ills. 216; *Johnson* v. *St. Louis*, 2 Mo. App. 563; *Commercial Bk.* v. *Hughes*, 17 Wend. 94; *Marsh* v. *Oneida Central Bk.*, 34 Barb. 298; *Dows* v. *Merwood*, 10 id. 184; *Allen* v. *Culver*, 3 Den. 284; *Sheppard* v. *Steele*, 43 N. Y. 52, 59, 60.)

RUGER, Ch. J.   The First National Bank of Buffalo had, prior to 1882, for a series of years, been annually appointed, a depositary of the State, for canal tolls receivable in the city of Buffalo, and had annually executed and delivered to the State, contracts regulating the relations between them, the performance of which had been in each year guarantied on the part of the bank, by some of its directors, in their individual capacity.

Early in the season of 1882 said bank became insolvent after it had been appointed a depositary, but before it had completed and delivered to the State, satisfactory security for the performance of its obligations for the ensuing year, and after that time the State discontinued its relations with such bank.

Upon its insolvency the bank was found to be indebted to the State in a large sum of money, and the question in this case arises over the liability of its guarantors, for such debt.   The complaint embraces the guaranties of both the years of 1880 and 1881, in its allegations, and seeks to recover the balance appearing to be due on the account, at the commencement of the year 1882   These contracts and guaranties were expressed in precisely similar language, and so far as the parties to them are concerned are subject to the same rule of interpretation, and must be understood to have been intended, to cover the same class of obligations, and to differ only in respect to the time of their execution, and the period of time covered by their provisions. Such guaranties are joint and several in character, and it would constitute no defense to an action upon any of them, to

show that there were other persons liable to the State, for the whole or a portion of the same debt, claimed of the defendant, or that such persons are not made parties to the action.

The defendants here are each and all obligors upon the bonds of both 1880 and 1881, and in the view we take of the case it does not enlarge their liability, to consider their situation as parties to the guaranty of 1880. It may be that, as the result of investigation, it will be discovered that other parties liable to the State, for a portion of the money due from the bank, at the time of its insolvency may be found, and, as a consequence flowing from such fact, that the defendants in this action may have a claim for contribution, from such parties, in case they are obliged to pay the whole sum due the State, but it is not perceived how that fact can affect the liability of such guarantors upon their express contract of indemnity.

The only breach of the obligations of the guaranty alleged in the complaint consists of the refusal of the bank to pay the sum claimed to be due from it, by the State on the 20th day of April, 1882, and that amount consisted of the general balance due on the account, accruing through a series of years and covering the operations of 1880, as well as those of 1881.

Whatever, therefore, may be the liabilities or obligations of the parties to the contract and guaranty of 1880, it is entirely immaterial in this action, for the guaranty of 1881 covers not only the transactions of that year, but also the liability resulting from the transactions of 1880, as represented by the balance due from the bank to the State, at the time of the execution of the contract and guaranty of 1881.

If, therefore, it shall appear upon the further examination of the case that the defendants are liable upon the guaranty of 1881, for the whole balance due from the bank to the State, in the spring of 1881, no question arises as to the proper application of payments made by the bank, in the respective years, or as to the equities of the guarantors of the respective years as between themselves. Such rights are to be settled and adjusted in an appropriate action, to

which all such guarantors are made parties, and where every one interested may be heard in his own behalf, and these claims could not be heard here for want of proper parties, if for no other reason.

This is a simple action at law upon a written instrument for a sum of money claimed to be due to the plaintiff from the parties thereto. If the letter of their contract shows that they have made themselves liable for the sum claimed, it is no defense to show that there are other persons who might also be resorted to by the State for a portion of the same sum.

It is claimed by the appellants that the sureties on the bond of 1881 have been released from liability thereon, by reason of the acceptance by the State, of a contract and guaranty from the bank for the year 1882, and it is contended that such acceptance operated as a discharge of all previous guaranties.

This claim seems to be disposed of by the finding of facts made by the referee. He expressly finds that the State never accepted the same, as a compliance by the bank with the condition imposed upon them, by the State in respect thereto.

The evidence in the case seems to us fully to support this finding, and renders it not only probable, but quite certain that the State authorities did not intend to accept the guaranty in question.

The State could only be bound to such acceptance, by the express action of its officers duly authorized to approve such guaranty, or perhaps their omission to act thereon for such a lapse of time, as would authorize a legal presumption that they intended to approve the guaranty.

During the period between the receipt of the proposed guaranty and the insolvency of the bank, but a few days intervened and the auditor was diligently employed in this time, in inquiring into the responsibility of the persons proposed as sureties, and had received no satisfactory information upon that subject.

Under these circumstances no acceptance of such guaranty could properly be inferred, and no evidence of an actual approval of the guaranty by the State was given. The referee having failed to find that the guaranty of 1882 was received by the State in satisfaction of previous guaranties, there is no evidence in the case authorizing this court to hold that any such discharge was intended or effected, and no foundation for the claim that the sureties on the guaranty of 1881, were discharged by the acceptance, by the State of the guaranty of 1882.

The inquiry here may, therefore, be limited to the liability which the signers of the guaranty of 1881 incurred by the terms and conditions of their agreement. The main question arises over their liability for the debt existing, at the time of the execution of the guaranty, and arising out of the transactions and deposits of the year 1880.

It is claimed by the appellants that the guaranty taken in 1881 was intended to be prospective in its operation only, and did not cover existing deposits. It is not claimed, but that the express terms of the undertaking cover such a liability, but it is contended that the words of the condition, should be limited and controlled by the language of the recital, and, so restricted, could not reasonably be held to include an existing debt.

It cannot be disputed but that there is much authority tending to support the position contended for by the appellants, but we think the cases cited by them are generally cases where the language of the condition was doubtful and uncertain, and a consideration of the whole instrument and the circumstances surrounding the situation of the parties created an ambiguity, requiring the application of rules of construction, to determine the real obligation of the parties. The rule contended for is, however, one of construction, and obtains only for the purpose of ascertaining the real intention of the parties in making their contract. (*Burr* v. *American Spiral Spring Butt. Co.*, 81 N. Y. 175, 178 ; Brandt on Suretyship, § 138.)

It cannot prevail where the language of the condition

clearly and unmistakably shows an intention to incur a liability not in terms referred to in the recital. Guaranties are subject to the same rules of interpretation as other contracts, and especially to that fundamental rule requiring them to be enforced according to the meaning and intent, and in the manner designed by the parties at the time of their execution. (*Rochester City Bk.* v. *Elwood,* 21 N. Y. 88, 90 ; *Burr* v. *Am. S. S. B. Co.* 81 N. Y. 175, 178.)

While the liability of guarantors is *strictissimi juris* and cannot be extended by construction beyond the plain and explicit language of their contract, they are still subject to the rule that effect must be given to all of the language contract, and a meaning and effect, ascribed to each of the word and phrase used therein, if it can be done without violating its plain intent. The general rule is undoubtedly, that a contract cannot be construed to have a retroactive operation, and that such an effect can be given to it only where by express words or by necessary implication, it clearly appears to be the intention of the parties to embrace past transactions, but when this does appear, it is indisputably competent for parties to bind themselves for such liabilities.

We are clearly of the opinion, in this case, that the contract itself recognizes an existing liability on the part of the bank to the State, and provides for its extension and the security thereof by the guarantors.

This would seem to be not only a natural requirement on the part of the State, while taking a new security from a debtor contemplating extended and continued transactions, but a necessary measure of precaution to avoid the complications involved, in investigating the transactions of former and perhaps remote years.

It would be not only difficult, but almost impracticable, for the State to have its transactions, with such a depositary separated into distinct divisions, and be compelled to seek its indemnity among the conflicting equities and claims of numerous sureties, liable upon different contracts for the transactions of different years.

It is, however, not permissible, we think, to resort to rules of construction in such a case as this, for there is no ambiguity in the language of the contract, and it provides in express terms for the liability in question. Thus, it states not only that the bank shall "well and faithfully account for and pay over all moneys deposited with it or for which it shall in any way become liable in and by said contract, according to the terms and provisions thereof," but "that said bank shall account for and pay over all money now on deposit in said bank to the people of the State of New York."

More explicit language could not be used, and it is impossible to assign any other meaning to the language used than that the sureties intended to be bound for the continuing security of the existing deposit.

It is not competent for parties to such an undertaking to allege that they were ignorant of the existence of a debt expressly provided for, or that they have been misled by the omission of their principal to notify them of its existence. ( *Western N. Y. L. Ins. Co.* v. *Clinton,* 66 N. Y. 226, 330.)

The rule applicable to the subject is well stated in Brandt on Suretyship (§ 138), in the following language: "When the words of the condition of a bond are general and indefinite as to the time during which the surety shall remain liable, if there is a recital in the bond specifying the time during which the prescribed duty is to be performed by the principal, the general words will be limited by the recital and the surety will only be liable for the time therein specified. The reason is, that taking the whole instrument together it is but fair to presume that the parties had in contemplation only a liability for the time specified. It is a rule of construction adopted for effectuating the intention of the parties." (See, also, *Burr* v. *Am. Spiral Spring Co., supra.*)

The conclusions reached on the propositions discussed necessarily dispose of all other questions raised by the appellants.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.