HARRY S. BARNES et al., Appellants, *v.* THOMAS W. CUSHING,
Respondent, Impleaded with Others.

1. PRINCIPAL AND SURETY — LIABILITY OF SURETIES UPON BOND TO
SECURE STATE DEPOSITS.    Existing deposits in a bank designated as a
depositary of canal moneys, at the time of the giving of a bond for the
faithful performance of its contract with the state as depositary for the
succeeding year, are covered by the bond where the sureties by its terms
become liable not only for all moneys received by the bank under the con-
tract, but undertake that the bank shall account for and pay over all
moneys "now in deposit in said bank, or due or to become due therefrom."

2. RELEASE — SUCCESSIVE BONDS — CONTRIBUTION.    In the absence of
any evidence to show that a contract and bond were accepted by the
state as a compromise of its claim under a contract and bond for the
preceding year, or that the contract and bond for the preceding year
were surrendered and canceled, the sureties on such bond are not relieved
from liability by the state's acceptance of the new contract and bond,
and either of such sureties can compel contribution by the other sureties
for amounts paid by him as surety thereon.

*Barnes* v. *Cushing*, 43 App. Div. 158, reversed.

(Argued October 15, 1901; decided November 26, 1901.)

APPEAL from a judgment of the Appellate Division of the
Supreme  Court in the first judicial department, entered

April 12, 1900, upon an order reversing a judgment in favor of plaintiff entered upon the report of a referee and dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene H. Lewis* and *John C. Rowe* for appellants. The execution of the contract of 1881 and the delivery and acceptance of the bond of that year did not, jointly or severally, absolve the guarantors on the bond of 1880. (*People* v. *Cushing*, 36 Hun, 484; *People* v. *Lee*, 104 N. Y. 441; *United States* v. *Hoyt*, 1 Blatchf. 326; *Day* v. *Leal*, 14 Johns. 404; *Davis* v. *Anable*, 2 Hill, 339; *Remsen* v. *Graves*, 41 N. Y. 471.) Payments made by the bank to the state during the year 1881 should be applied to the extinguishment of the indebtedness for the deposits of that year. (*Bridenbecker* v. *Lowell*, 32 Barb. 9; *Harding* v. *Tifft*, 75 N. Y. 461; *Seymour* v. *Van Slyck*, 8 Wend. 403; *Stone* v. *Seymour*, 15 Wend. 19; *Camp* v. *Smith*, 136 N. Y. 187; *Campbell* v. *Vedder*, 1 Abb. Ct. App. Dec. 295; *Schram* v. *Werner*, 85 Hun, 293.) Upon paying the judgment recovered against him Barnes was entitled to complete indemnity from Cushing. (De Colyer's Law of Guaranties, 346; *Jones* v. *Benedict*, 83 N. Y. 79; *Briggs* v. *Spaulding*, 141 U. S. 132; *Crisfield* v. *Murdock*, 127 N. Y. 315.)

*Tracy C. Becker* for respondent. The obligation executed by the new guarantor or surety in the year 1881 covered the then existing indebtedness of the bank of previous years, being the balance on deposit January 1, 1881, as well as that which might arise by reason of subsequent deposits to be made in the year 1881. (*Collins* v. *Gwynne*, 9 Bing. 544; *Gwynne* v. *Burnell*, 2 Bing. [N. C.] 7; Burge on Suretyship [Am. ed. 1847], 124; *Pennell's Case*, 5 Co. 117; *Colt* v. *Netterville*, 2 P. Wms. 304; *Clayton's Case*, 1 Merr. 605; *Waters* v. *Riley*, 1 Harr. & Gill, 305.) The state, after the close of the year 1880, having taken a new and additional security, precisely the same in form and effect as the bond of 1880, but without

Cushing as surety, the sureties of 1881 in paying the deficit of 1880 and saving the defendant Cushing harmless therefrom, did just what it was their duty to do towards him and no more. (Burge on Suretyship, 324, 348, 352; Fell on Suretyship [Am. ed. 1859], 296, note; *Hayes* v. *Ward*, 4 Johns. Ch. 130; *Hodgson* v. *Shaw*, M. & K. 183; *Bissell* v. *Saxton*, 66 N. Y. 55; *Vivian* v. *Otis*, 24 Wis. 518; *Mahaska* v. *Ingalls*, 16 Iowa, 5; *K. M. Ins. Co.* v. *Clark*, 33 Barb. 196; *Hassel* v. *Long*, 2 M. & S. 370; *Peppin* v. *Cooper*, 2 B. & A. 431; *Leadly* v. *Evans*, 9 E. C. L. 469; *Overacre* v. *Garrett*, 5 Lans. 156.) A surety cannot recover of a surety the costs which have been taxed against him or his own costs. (*Knight* v. *Hughes*, 3 Carr. & P. 467; 1 M. & M. 247; Burge on Suretyship, 388.) A surety is not entitled to recover interest against his co-surety. (*Bell* v. *Free*, 1 Swanst. 90; *Rigby* v. *McNamara*, 3 Cox, 415; Burge on Suretyship, 357.)

BARTLETT, J. The plaintiffs, as executors under the will of Joseph C. Barnes, deceased, seek to compel contribution by the defendant and others as co-sureties with testator on a certain bond. The case as finally submitted to the learned referee was upon the sole issue as to the liability of defendant Cushing.

The First National Bank of Buffalo for several years prior to and including 1880 had been annually designated by the canal board as one of the depositaries of canal moneys or tolls at the city of Buffalo, and duly received a portion of such moneys, annually giving a bond to the people of the state of New York for the faithful performance of its agreement with the state, executed at the same time, as well as an additional obligation as therein set forth, and to which reference will be made later. The agreement is lengthy, but most of its provisions are immaterial at this time. The bank was to allow the state three per cent interest per annum, was to honor the drafts of the state at sight, and was at liberty at all times to pay over the moneys of the state in a certain manner, and thus relieve itself from further liability.

The question now presented arises under the annual designations of the bank for the years 1880 and 1881 as such depositary, and the agreements and bonds then executed. The testator Barnes and the defendant Cushing were both sureties, with seven others, on the bond given in 1880. Cushing had signed a similar bond in the years 1878 and 1879, but refused, when requested, to sign the bond given in 1881. Cushing was, at the time he executed the bonds of 1878, 1879 and 1880, a stockholder and director of the bank, and continued to be until some months after the giving of the bond of 1881, in which he refused to join. Cushing severed his connection with the bank in September or October, 1881, ceasing to be a director and selling his stock.

The testator Barnes was a surety under the bond of 1881 as well as that of 1880.

The sureties on the bond of 1880 jointly and severally covenanted that the bank would "well and faithfully do and perform all things contained in said contract on its part to be done and performed, and shall well and faithfully account for and pay over all moneys deposited with it, or for which it shall in any way become liable, in and by said contract, according to the terms and provisions thereof, and that said bank shall account for and pay over all money now in deposit in said bank, or due, or to become due therefrom, to the people of the State of New York."

The agreements and bonds in the years 1880 and 1881, as in all other years, are precisely alike, being forms prescribed by the canal board.

The bank, on the 14th day of April, 1882, became insolvent, and a receiver was duly appointed. At the time the agreement and bond of 1880 were executed the bank was indebted to the state as such depositary in the sum of $65,000.00, and at the close of the year 1880 the indebtedness was increased to the sum of $73,001.00, over and above all payments.

The bond, as already quoted, is clear upon its face to the

effect that the sureties become liable not only for all moneys received by the bank under the contract, but they undertake that the bank shall account for and pay over all moneys "*now in deposit in said bank, or due, or to become due therefrom.*"

After the failure of the bank the state proceeded against the sureties in actions at law. One of these cases (*People* v. *Lee*, 104 N. Y. 441) came to this court, and the form of the contract and bond now before us was considered.

The complaint in that action embraced the contracts and bonds of 1880 and 1881, and sought to recover the balance appearing to be due on the account at the commencement of the year 1882.

It was, among other defenses, insisted that the bond taken in 1881 was intended to be prospective in its operation only, and did not cover existing deposits. The court said: "It is not claimed but that the express terms of the undertaking cover such a liability, but it is contended that the words of the condition should be limited and controlled by the language of the recital, and, so restricted, could not reasonably be held to include an existing debt." The learned judge pointed out that this rule of construction could not prevail when the language of the condition was clear. He then said: "We are clearly of opinion, in this case, that the contract itself recognizes an existing liability on the part of the bank to the State, and provides for its extension and the security thereof by the guarantors. This would seem to be not only a natural requirement on the part of the State while taking a new security from a debtor contemplating extended and continued transactions, but a necessary measure of precaution to avoid the complications involved in investigating the transactions of former and perhaps remote years. It would be not only difficult, but almost impracticable, for the State to have its transactions with such a depositary separated into distinct divisions and be compelled to seek its indemnity among the conflicting equities and claims of numerous sureties, liable upon different contracts for the transactions of different years." After commenting on the language of the bond we have already quoted,

the opinion proceeds: " More explicit language could not be used, and it is impossible to assign any other meaning to the language used than that the sureties intended to be bound for the continuing security of the existing deposit."

It was said by counsel that the case from which we have quoted was an action at law on the bond and did not involve the question of contribution among sureties. That is doubtless so, but this court construed at that time an agreement and bond given in 1881, similar in all respects to those given in 1880, and now under consideration.

It was suggested as an additional point in that case, as in this, that the sureties had been released from liability by the acceptance by the state of the contract and bond of the next succeeding year.

In *People* v. *Lee* (*supra*) there was an express finding that the state did not accept the new contract and bond as a compliance by the bank with the condition imposed upon it. In the case at bar it is not claimed that there is proof of accord and satisfaction or novation independently of what is disclosed on the face of the instruments.

In *People* v. *Cushing* (36 Hun, 483), a case against the defendant here, the General Term of the third department, Presiding Justice LEARNED writing for the court, held, reversing the judgment entered on report of a referee, that in the absence of any evidence to show that the second contract and bond were accepted as a compromise of its claim by the state under the first contract and bond, or that the first contract and bond were surrendered or canceled, the acceptance of the second contract and bond did not discharge the defendant from any liability incurred by him under the first.

The learned Appellate Division of the first department, in the case at bar, declined to approve and follow the case last cited, and construed the annual contract and bond of 1881 as by their express terms superseding the contract and bond of 1880 and releasing defendant from all liability.

We are of opinion that this construction is not only contrary to that of this court in *People* v. *Lee* (*supra*), but also

differs from the construction we should adopt if at liberty to consider the question an open one here.

The reasoning of RUGER, Ch. J., in *People* v. *Lee* (*supra*) is clear and cogent, and requires no amplification at this time.

We are bound to give full force and effect to the undertaking of the surety that the bank should pay over " all moneys now in deposit in said bank." That amount was $65,000.00 when the bond of 1880 was executed. The testator was compelled to pay as surety the sum of $58,802.94, and was paid by the receiver of the bank and his co-sureties certain amounts.

The referee after considering these facts, the accounts of the bank with the state and all the proofs, and applying to them the rule of the application of payments (there having been no application of them in the year 1881), reached the conclusion that the defendant Cushing was liable for principal and interest in the aggregate sum of $7,750.54, together with costs and disbursements.

As the Appellate Division decided that the defendant Cushing was relieved from all liability by the state accepting the contract and bond of 1881, they very properly dismissed the complaint and refrained from examining the questions of fact and law upon which the referee fixed the amount of Cushing's liability.

We are of opinion that the testator, Joseph C. Barnes, and the defendant, Thomas W. Cushing, stand *in equali jure*, as sureties on the contract and bond of 1880, and either can compel contribution of the other as the facts may warrant.

If it be ultimately established that the testator has been called upon to bear a portion of the burden that should have rested on the other sureties, then on the principle that equality of burden as to common right is equity, the obligation to contribute arises. (*Aspinwall* v. *Sacchi*, 57 N. Y. 331, 335, *et seq.*, and cases cited.)

In ascertaining the amount for which defendant Cushing is liable, the starting point is the sum found due from the bank to the state when the bond of 1881 was executed. The referee has found that this amount is $73,001.00.

The single question presented to us on this appeal is one of law, whether the complaint was properly dismissed by the Appellate Division.

We are of opinion that the judgment of the Appellate Division reversing upon the law the judgment entered upon the report of the referee in favor of plaintiffs and dismissing the complaint, should be reversed, and the record remitted to the Appellate Division to consider and decide all the questions presented by the cross-appeals from the judgment of the referee, other than the one now determined, with costs to the plaintiffs in all the courts to abide the event.

PARKER, Ch. J., MARTIN, VANN (CULLEN, J., in result) and WERNER, JJ., concur; GRAY, J., dissents.

Judgment reversed, etc.