Lucille G. Isaacs, Plaintiff, *v.* The Equitable Life Assurance Society of the United States, Defendant.

(Supreme Court, Richmond Trial Term, February, 1921.)

Insurance (life)— when company bound by delivery of policy to assured although conditions of policy are not complied with — actions — evidence — contracts.

The common practice of insurance companies placing in the hands of agents policies which appear on their face to be binding contracts of insurance, but which are intended to be effective only on compliance with certain preliminary conditions, is not to be commended, and if the agent deliver the policy

without requiring compliance with such conditions, the insurance company is in justice bound by the policy.

Where in an action to recover on a policy of insurance issued by defendant on the life of plaintiff's husband within a month of his death, the evidence is that the delivery of the policy by defendant's soliciting agent to the insured, who never signed the application for the policy, and his acceptance thereof, were with intent that it should at once become a contract and the first premium paid later, and it further appears that the attention of the insured, though he had previously taken out other insurance with defendant, was not called to any provision of the policy requiring the signing of an application, or the payment of the first premium, or any other preliminaries, and that the agent had apparent authority to deliver the policy, it became a contract binding upon both parties, and as against the defense that the policy had no valid inception, plaintiff was entitled to recover the amount of the policy less the amount of the first premium, with interest from the date when the proceeds became due and payable.

Action to recover the proceeds of a policy of life insurance.

Carl D. Isaacs (Montague Lessler, of counsel), for plaintiff.

Alexander & Green ( Clifton P. Williamson and Peter C. Mann, of counsel), for defendant.

Benedict, J.   This is an action to recover the proceeds of a policy of insurance on the life of Max M. Isaacs, deceased husband of the plaintiff. The defendant resists payment on the ground that the policy never had a valid inception, because the application was never signed by the assured, and because the first premium was not paid at the time of the assured's death.

Briefly stated the facts were that one Graham, a soliciting agent of defendant, had in December, 1919, obtained from the assured an application for a $3,000

policy, which was issued and delivered and the first premium paid. Graham had also caused to be issued a $2,000 policy, which he offered to assured at the same time, and which assured accepted, signing the application therefor and paying the first premium. Subsequently, on January 18, 1920, without further order or application by the assured, Graham caused to be issued by the defendant an additional policy on the life of the assured for $3,000, based upon the examination made upon the first application above mentioned, which policy Graham offered to the assured on January 17, 1920. Just what took place at the time of this offer is in dispute. A disinterested witness, called on behalf of plaintiff, gave testimony which would justify the inference that assured accepted this additional policy, and that it was agreed between him and Graham that he should pay the first premium at a later date. Graham, on the other hand, gave testimony to the effect that he left the policy with assured pending the latter's decision as to whether or not he would accept it. There is no dispute that the policy was handed to and left with assured, together with an application to be signed by him, a copy of which was attached to the policy. Very shortly afterward assured became ill and died of such illness early in February, 1920. The application for the policy was never signed and the first premium never paid. The form of application contained the following provision: "I hereby agree that the policy issued hereon shall not take effect until the first premium has been paid during my good health; that no agent or other person except the President, a Vice-President, the Secretary or Treasurer of the Society [the defendant] has power to make or modify any contract on behalf of the Society or to waive any of the Society's rights or requirements, and that no waiver

shall be valid unless in writing and signed by one of the foregoing officers.''

The policy itself contains the following clauses, which are material to the present inquiry:

'' The Contract. This policy, and the application therefor, a copy of which is endorsed hereon or attached hereto, constitute the entire contract between the parties.''

''Agents are not authorized to modify, or in the event of lapse, to reinstate this policy, or to extend the time for payment of any premium or instalment thereof.''

'' This insurance is granted in consideration of the payment in advance of Thirty-five and 28/100 Dollars and of the payment quarterly thereafter of a like sum,'' etc.

'' Grace. A grace of thirty-one days, subject to an interest charge at the rate of 5% per annum will be granted for the payment of every premium *after the first,* during which period the insurance hereunder shall continue in force.'' Italics are mine.

These several provisions appear on the inside of the policy on pages 2 and 3.

At the conclusion of the trial both parties moved for the direction of a verdict, thus submitting all questions both of law and fact to the court for decision. Decision of these motions was reserved by consent of counsel for both parties.

I have reached the conclusion that a verdict should be directed for the plaintiff for the amount of the policy, less the first premium, and interest from the date when the same became due and payable.

So far as the issue of fact above outlined is concerned, the weight of evidence seems to me to be in favor of the plaintiff. Plaintiff's witness was disinterested, while defendant's witness, who is still in its

employ, and who may be affected financially by the result of this action if he disobeyed his instructions, cannot be regarded as being disinterested. I, therefore, decide that the policy was delivered by Graham and accepted by assured with intent that it should take effect at once, and that the payment of the first premium should be deferred for a short time.

This brings me to the next question, whether such action on the part of Graham was effective to give a valid inception to the policy in the face of the provisions contained therein and in the application, which I have above quoted. If there had been evidence that the attention of assured had been in any way called to the said provisions, or to the necessity of signing the application and paying the first premium before the policy would take effect, I should say without hesitation that the policy never had any inception as a contract. But such was not the case. The policy and the application appear to have been handed to assured in an envelope. Part of the envelope was transparent, so that the number and amount of the policy and the name of the assured, amount of premium and other matters indorsed on the outside of the policy were visible, and there was printing on the back of the envelope. There was nothing, however, visible on the outside to call assured's attention to the clauses and provisions above quoted, and there was no evidence that his attention was called thereto in any other way. That assured had previously taken out other insurance with defendant, and so may have acquired knowledge of the provisions contained in other policies and applications does not, as it seems to me, affect the question. It was what was done with respect to this particular transaction, and only that, which is material in determining the rights of the parties. *Bodine* v. *Exchange Fire Ins. Co.,* 51 N. Y. 117, 122.

As the defendant intrusted this fully executed policy to Graham for delivery, I think he must be considered as clothed at least with apparent authority to deliver it upon the terms and under the conditions upon and under which I have found, as above stated, that he did deliver it; and, as assured's attention was not called to the provisions limiting Graham's authority, the defendant is bound by the policy.

This seems to me to be the result of the leading authorities on this subject. In the latest pronouncement by our Court of Appeals, to which my attention has been called, *Whipple* v. *Prudential Ins. Co.*, 222 N. Y. 39, Collin, J., writing for an unanimous court, said: "We are, therefore, to determine whether or not there was any evidence that the defendant waived its right that the policy should remain ineffective until the payment of the first premium. Our conclusion depends upon the existence or non-existence of evidence tending to prove (a) that J. W. Wilson, who delivered the policy, had authority to waive that right, and (b) that his acts and language effected the waiver." Pp. 44, 45.

In the present case the first condition is met, as already indicated, by the fact that the defendant by intrusting the executed policy to Graham clothed him with apparent authority to make the waiver (*McClelland* v. *Mutual Life Ins. Co.*, 217 N. Y. 336, 346 *et seq.*; *Ames* v. *Manhattan Life Ins. Co.*, 40 App. Div. 465; affd., on opinion below, 167 N. Y. 584; *Bodine* v. *Exchange Fire Ins. Co.*, 51 id. 117, 123), assured not being affected with notice of any limitation upon such authority, as I have pointed out. The present case is distinguishable from *Allen* v. *German American Insurance Co.*, 123 N. Y. 6, by the fact that there the person to whom the policy was intrusted for delivery was a mere broker not in defendant's general employment. See *Bernard* v. *United Life Ins. Assn.*, 17 Misc.

Supreme Court, February, 1921. [Vol. 114.

Rep. 115. The second condition is met by plaintiff's proof of the interview between Graham and the assured at the time of the delivery of the policy above referred to. The present case is distinguishable from *Russell* v. *Prudential Insurance Co.,* 176 N. Y. 178, by the fact that in that case assured had signed the application and hence must in the absence of proof to the contrary be presumed to be familiar with the contents thereof. P. 188. In the present case the policy if it became a contract at all, became so at the moment of delivery. There being evidence that the delivery and acceptance were with intent that it should at that time become a contract, and the attention of assured not having been then called to any provision therein requiring the signing of an application or the payment of the premium or any other preliminaries, and Graham having apparent authority to make delivery, the contract thereupon became binding on both parties. The stipulations intended to prevent the policy from becoming effective until the signing of the application and payment of the first premium could not themselves become effective until the policy became a contract, and they could be waived by delivery and acceptance of the policy with intent that it should take effect without compliance therewith. *Whipple* v. *Prudential Ins. Co., supra,* 43; *Bodine* v. *Exchange Fire Ins. Co.,* 51 N. Y. 117.

The common practice of insurance companies of placing in the hands of agents policies which appear on their face to be binding contracts of insurance, but which are intended to be effective only on compliance with certain preliminary conditions, is not one to be commended, and if, in such a case, the agent deliver the policy without requiring compliance with such conditions, the insurance company ought in justice to be bound by the policy. *Church* v. *LaFayette Fire Ins.*

*Co.,* 66 N. Y. 222; *Squier* v. *Hanover Fire Ins. Co.,* 18 App. Div. 575, 578.

A verdict is accordingly directed for the plaintiff for the amount of the policy less the amount of the first premium, and interest from the date when the proceeds became due and payable.

Judgment accordingly.