BARNES et al. v. CUSHING et al.

(Supreme Court, Appellate Division, First Department. April 25, 1902.)

1. BONDS—SURETIES—CONTRIBUTION—LIABILITY.

A bank which was made a depositary of state moneys gave a bond in 1880 to account therefor, on which defendant and plaintiff and others were sureties. In 1881 a new and similar bond was given, with the same sureties, except defendant, in whose place another was substituted. In 1880 the bank received $73,000. In 1881 it paid to the state drafts amounting to $35,000, also receiving further deposits, and in 1882 became insolvent, owing the state some $72,000. The drafts were paid out of the general funds, without reference to the deposits. *Held* that, since the second bond caused the continuance of the relations, defendant, who was liable on the first bond for funds received in 1880 only, was entitled° to have the payment of $34,000 applied to that year's deposits.

2. SAME—PAYMENTS BY PRINCIPAL DEBTOR—APPLICATION.

Payments to the state by the receiver in liquidation, made from all the proceeds of the bank, were to be applied in the same manner.

3. SAME—PAYMENTS BY CO-SURETIES.

A payment received from the estates of two sureties, who were liable on both the bonds, was not to be applied alone to the indebtedness created in 1880, but was to be apportioned by applying to defendant's liability the proportion which it bore to the entire liability.

4. SAME.

Defendant was not entitled to be credited with a payment made by the substituted surety, who was liable only on the bond of 1881.

5. SAME—DEFENSE BY CO-SURETY.

Plaintiff having unsuccessfully attempted to defend an action by the state on the bonds, in which his principal defense was that the bond of 1881 was prospective only, and defendant not having had notice requiring him to defend in such action, he was not liable for any of the costs of such defense.

Appeal from judgment on report of referee.

Action by Harry S. Barnes and another against Thomas W. Cushing and others. From the judgment, both parties appeal. Modified and affirmed.

In March, 1880, the canal board duly designated a bank at Buffalo as a toll-deposit bank, and a contract was made with the bank by the state prescribing the terms on which deposits were to be made therein; and a bond was thereupon entered into, providing that the bank should account for and pay over all moneys then on deposit, or due or to become due to the people of the state during the year 1880. Various deposits were made in the bank, and in March, 1881, there was a balance of $73,000, with interest, to the credit of the state. At that time the canal board passed a resolution under which another contract was made with the bank for the ensuing year, substantially in the same form as that made for the year 1880, except with a difference as to dates; and a new bond was issued, reciting that the bank had agreed to receive and account for deposits on the terms expressed in the contract of even date, which was annexed to the bond. The obligors agreed that the bank should account for and pay over the moneys deposited with it. This bond was signed by all the obligors of the bond of 1880, except one. Under the new contract the bank continued to receive deposits and pay drafts during the year 1881, and in April, 1882, the bank became insolvent.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

Eugene H. Lewis, for plaintiffs.
Tracy C. Becker, for defendant.

INGRAHAM, J.   This case has been before this court on a former appeal, where the judgment appealed from was reversed, and the complaint dismissed.   The facts of the case are fully set forth in the former opinion.   43 App. Div. 158, 59 N. Y. Supp. 345.   We there held that the bank held the amounts due to the state under the contract of 1881; that a surety to secure the performance of the 1880 contract was not liable to contribution for a liability upon a bond given to secure the payment of the contract of 1881.   Upon appeal to the court of appeals it was held that the contract and bond of 1881 did not supersede the contract and bond of 1880, and thereby release the defendant from liability; that full force and effect should be given to the undertaking of the sureties that the bank should pay over "all moneys now in deposit in said bank upon the bond of 1880"; that the plaintiff Joseph C. Barnes and the defendant Thomas W. Cushing stand in equali jure, as sureties on the contract and bond of 1880, and either can compel contribution of the other, as the facts may warrant. Barnes v. Cushing, 168 N. Y. 542, 61 N. E. 902.   In an action brought against the plaintiffs' testator to recover the balance due to the state on the 18th day of April, 1882, the plaintiffs' testator was compelled to pay the sum of $44,783.31, and interest and costs, amounting in the aggregate to $58,802.94; and the sole question to be determined is as to what portion of this sum, if any, the defendant Cushing is liable to pay to the plaintiffs' testator.

The referee has found that there was due from the bank on May 6, 1881, when the contract of 1881 and the bond to secure the performance of that contract were executed, the sum of $73,001, with interest, according to the terms of the contract; that during the year 1882 the bank paid to the state all drafts drawn upon this fund, amounting in the aggregate to $35,000; that between the 7th of May, 1881, and the 26th of April, 1882, inclusive, the bank received of canal moneys or tolls collected at the city of Buffalo under its contract of 1881, including interest on the balance that it was required to pay under the contract, the sum of $34,291.43, so that on the 26th day of April, 1882, the bank was indebted to the people of the state on a balance of the account in the sum of $72,292.43; that on the 14th day of April, 1882, the said bank, being insolvent, closed its doors, and did no business thereafter, and that a receiver of the assets of the bank was duly appointed; that subsequent to the 26th day of April, 1882, the receiver paid to the people of the state on account of such indebtedness the sum of $27,509.12, leaving unpaid of the amount due to the state on the 26th day of April, 1882, the sum of $44,783.31; that subsequently, and in the year 1887, in consequence of a judgment recovered by the people of the state against Joseph C. Barnes and the other sureties upon the bonds, the plaintiffs' testator paid to the people of the state this sum of $44,783.31, and interest and costs, aggregating the sum of $58,802.94; that subsequent to that time the plaintiffs' testator received from two of his co-sureties who were upon the bond of 1880 and 1881 the sum of $8,920, and that in the year 1888 the plaintiffs' testator received from the receiver of the bank, as additional dividends paid from the assets of the bank, the principal debtor, the sum of $3,981.58; that there were also received from the estate of Charles

T. Coit and from George Coit and from Henry Zink and William B. Sirret co-sureties of the plaintiffs' testator and the defendant Cushing upon the bond of 1880 and 1881, various sums of money, which the plaintiffs admit were sufficient in amount to pay their proportionate share of the amount of their respective liabilities, on the basis of the solvency of each and all of the sureties to the said bonds; that the other sureties upon both bonds of 1880 and 1881 were at the time of the payment by said Barnes to the people of the state as above set forth, and ever since have been, insolvent, and unable to pay any proportion of their contributive shares of the aggregate amount so paid by the said Barnes to the people of the state as aforesaid; that there never was any application of the moneys, or any part thereof, paid on the indebtedness of the state, or any specific part of that indebtedness, by the state or the bank or the receiver.

On the 4th day of January, 1880, the bank was liable to the people of the state, for which liability the defendant Cushing was a surety for $73,001. During the year 1881 the bank paid to the people of the state the sum of $35,000, and during that period received as deposits on account of the state, under the contract, including interest which under the contract it was bound to pay, the sum of $34,291.43. It is not, as I understand it, claimed that the defendant Cushing was liable for the deposits made during the year 1881. The payments made by the bank to the state during that year not having been applied to any particular indebtedness by either the people or the bank, in determining the liability of the defendant Cushing to the plaintiffs' testator we are required to determine whether these payments are to be applied upon the amount due to the state from the bank on the 6th day of May, 1881, when the new contract was made, or whether they should be applied upon the current deposits received by the bank during the year 1881. There is no dispute as to the general rule that where there is a running account, and payments are made by the debtor to the creditor, and no application of such payments have been made by either, the court will apply the payment, upon a settlement of the accounts, to the earliest item of indebtedness. The plaintiffs, however, claim that this rule applies only where there is a dispute between the debtor and creditor, and that, where the dispute is between a guarantor or surety and the creditor, a court of equity will apply the payment according to its own notions of justice, and in such a manner as will do the greatest equity. The referee applied the usual rule as between debtor and creditor, crediting the amounts of these payments upon the earlier indebtedness, and thus reduced the balance due to the state, for which the defendant Cushing was responsible, to the sum of $38,001. Of this application the plaintiffs complain, and, having appealed from the judgment, its propriety must be determined.

I agree with the plaintiffs that the principle that has been applied by which a payment, in the absence of an application by either of the parties, is to be applied to the earliest item of indebtedness, is not a hard and fast rule, but is based upon equitable principles, and will always yield to equitable considerations, where a different application would be more in accordance with equitable principles. That, I think, would be so whether the question arises between a debtor and creditor,

or between a creditor and the debtor's surety. The relation that existed between this bank and the people was that of debtor and creditor. The bank had been designated a depositary of state moneys, and in 1880 a contract had been made which regulated the terms upon which such deposits were to be made; and for the faithful performance of that contract the defendant Cushing and the plaintiffs' testator became sureties, and, as such sureties, they undertook that the said bank would "well and faithfully account for and pay over all moneys deposited with it, or for which it shall in any way become liable," according to the terms and provisions of the said contract, and that the said bank shall account for and pay over all moneys "now on deposit in said bank, or due or to become due therefrom, to the people of the state of New York." In May, 1881, the plaintiffs' testator and the defendant Cushing were, upon the bank's default, jointly and severally liable to the state to pay this sum; and in the natural course of business, if no new contract had been made, the state would then have required a settlement of the account, and the payment of the balance due. The state, however, made a new contract with the bank, under which it became entitled to receive deposits of money on account of the state for the year 1881. A new bond to secure the contract was required, and the defendant Cushing refused to become surety upon such bond, and another surety was substituted in his place. During the continuance of the new contract, and by reason of the plaintiff's testator and his co-sureties having guarantied the payment of the amount received by the bank during the year 1881, as well as the amount due by the bank at the commencement of the year 1881, the bank received the deposits for the year 1881, and secured the postponement of the payment of the balance due when the new contract was executed. There is no evidence that the bank was insolvent in May, 1881, when the contract of 1881 was executed, or that it would have been unable to respond to a demand by the state for the payment of the balance then due.

Now, applying equity principles as between these two sets of sureties, upon whom should fall the liability for the deposits received by the bank during the year 1881? There is no question presented here as between the debtor and the state. The creditor has been paid in full. What we have to determine is as between the two sets of sureties,—whether payments made by the bank during the year 1881 should be applied to reduce the indebtedness of the sureties for the year 1880 or the year 1881. There is no evidence to connect the payments made by the bank during the year 1881 with the identical amounts deposited to the credit of the state. The deposits appear to have been made each month during the period of navigation,—from May to November, inclusive. The payments were made in two sums, —one on August 20th, of $10,000, and one December 1st, of $25,000, —and presumably were made from the resources of the bank, without relation to the deposit of any particular sum that had been received by the bank, and cannot be held to be a payment of any particular sum of money that had been deposited in the bank to the credit of the people; and it would, we think, be more consistent with the principles of equity to hold that such a payment should apply to a reduction of

the earlier indebtedness for which the defendant Cushing was liable, than to apply it to the amount received during the year, where the act of the plaintiff's testator and his co-sureties, by becoming such sureties, enabled the bank to continue a debtor of the state, and to increase its obligation to the state. Applying the equitable principle contended for by the plaintiffs, we think that the payments should be applied to the reduction of the amount due prior to the execution of the 1881 contract.

The case of Seymour v. Van Slyck, 8 Wend. 403, was a case where equitable principles were applied upon the question of the application of payments. That and the cases cited to support the conclusion arrived at were between creditor and surety, and the application there made depended upon the equities that existed, as between the two classes of sureties, upon an enforcement by the creditor of the obligation of the claim against the principal. The sureties on the second bond were not liable for the amount due when the second bond was given, and the payments were of the moneys received during the period covered by the second bond. It was there held that moneys collected by the principal subsequent to the execution of the second bond could not be applied to the discharge of the first bond without manifest injury to the surety on the second bond. But the equities that are presented in a case involving, as this does, the question of contribution as between two sets of sureties, where there is absolutely no evidence that the payments that were made after the execution of the second bond had any relation to the collections made during that period, but were simply moneys paid by the principal in the general reduction of its indebtedness, and when the sureties on the second bond were also liable for the balance due when the second bond was given, have no application. What we have to do is to determine in this particular case what the general principles of equity require in the application of these payments; and, to my mind, the controlling fact is that it was because of the obligation assumed by the sureties upon the second bond that the relation continued during the year 1881, the payment of the indebtedness due in the beginning of the year 1881 was postponed, and the bank authorized to receive the deposits during the year 1881, and that, upon this state of facts, payments made during the year 1881 should not tend to relieve the sureties for that year from their obligations, rather than the sureties on a prior bond, who had refused to join in the second bond.

The fact that Cushing was a director of the bank at the time that both of these contracts were made, and owned 10 shares of the stock of the bank at that time, in the absence of any evidence to show that the bank was insolvent at the time when the contract was made, or that Cushing had any reason to believe that it was in difficulties, has no relation, I think, to this question. The plaintiffs' testator knew that Cushing was a surety upon the bond of 1880, and knew that he was not a surety upon the bond of 1881. Cushing had nothing to do with the plaintiffs' testator becoming surety upon either bond, and they had no relation to each other, except that of co-sureties upon the bond of 1880. As between these two sets of sureties, I think that equity requires that the burden of paying the deposits made during

the year 1881 should fall upon the sureties who guarantied the performance of the contract of 1881, and from whose acts the bank was enabled to receive such deposits, rather than upon a surety who had refused to become a surety upon that bond.

The next question presented is as to the application of the payments made by the receiver of the bank during its liquidation. The referee found that the receiver paid to the people, on account of the claim against the bank, $27,509.12, and paid to the plaintiffs' testator $3,981.58; making a total of $31,490.70. This sum the referee appropriated pro rata, treating the liability of the sureties on the first bond at $73,001, less the sum of $35,000, viz., $38,001; and he apportioned that by allowing a credit upon the amount due by the sureties on the first bond of $10,855.37, which, deducted from $38,001, leaves a deficiency of $24,144.63. This apportionment seems to have been based upon the decision of the court of appeals in the case of Bank v. Moore, 112 N. Y. 543, 20 N. E. 357, 3 L. R. A. 302, 8 Am. St. Rep. 775. I do not think, however, that that case goes to the extent of holding that, in all cases where there are two or more sureties liable upon different obligations to the same creditors, money received by the creditors through judicial proceedings must be applied ratably upon the different items of indebtedness. In that case the plaintiff held a mortgage to secure the payment of several notes indorsed by different persons. He foreclosed the mortgage, and received the proceeds of the sale of the mortgaged premises, and attempted to apply the money thus received to the payment of obligations upon which the defendant was not a surety, leaving other obligations upon which the defendant was a surety unpaid. The court held that the mortgagee had no right to make such an application of the proceeds of the mortgaged premises; that such moneys having arisen from a foreclosure and sale of the premises, and coming into the hands of the plaintiff (through the sheriff) by reason thereof, and in a judicial proceeding, their application would properly be made by the court, and upon equitable principles. That question does not arise in this case, as it is conceded that neither the debtor nor the creditor made any application as to these payments by the receiver. The same question seems to me to be presented as to these payments as was presented in relation to the voluntary payments by the bank prior to its insolvency, and I can see no reason why the same application of these payments should not be made. The moneys that were paid by the receiver on this claim had no relation to the particular deposits that had been made to the credit of the people of the state. They were the proceeds of all the assets of the bank, distributed among its creditors, and necessarily related to the property of the bank owned by it in the year 1880, as well as that acquired by the bank during the year 1881. There is no evidence as to when the bank became insolvent, but as it was transacting business in its ordinary way in May, 1881, when the obligation of the defendant Cushing as to this indebtedness ceased, and continued in business for nearly a year thereafter, the presumption is that it was then solvent. I think this dividend should be applied to the amount due in May, 1881, when the defendant Cushing's obligation ceased. Starting, therefore, with the balance due the state on the 6th

day of May, 1881, as $73,001, deducting therefrom the $35,000 paid by the bank during the year 1881, and the $31,490.70 paid by the receiver, makes the total paid by the bank of $66,490.70; being a balance due of $6,509.30 on the 6th day of May, 1881. The referee has found, and it was conceded, that there were nine sureties on this bond, who were jointly liable for this sum of $6,509.30. Of that, it is admitted that Charles T. Coit, George Coit, and William B. Sirret have paid their proportions, which would be one-third of the sum due. One-third of that sum would be $2,169.76, leaving a balance due of $4,339.54. There was realized from the estates of two of the other sureties, Vought and Frank E. Coit, the sum of $8,920; but it would be clearly unfair to apply all of this sum upon the amount due for which the defendant Cushing was responsible, as these two were also sureties upon the bond of 1881, and were also bound to contribute to the amount due, for which the plaintiffs' testator was liable upon that bond. The amount received from these two sureties should be apportioned between these two liabilities by applying upon the liability upon which the defendant Cushing was surety the same proportion of this payment as that amount bears to the whole amount for which plaintiffs' testator was liable. That proportion amounts to the sum of $864, which, deducted from the amount of $4,339.54, leaves to be paid by the two remaining solvent sureties, the plaintiffs' testator and the defendant Cushing, the sum of $3,475.54. The plaintiff is entitled to one-half of that sum, amounting to $1,737.77, with interest from May 6, 1881.

The defendant Cushing also claims that he should be credited with the payment made by Zink, a surety upon the bond of 1881. Zink was not a co-surety of the defendant Cushing, and occupied no relation to Cushing which would entitle Cushing to call on him for contribution. The amount that he paid to the plaintiffs' testator was paid on account of the obligation that he was under to contribute to the amount that the plaintiffs' testator was compelled to pay as surety on the bond of 1881. The amount that he paid to plaintiffs' testator went to satisfy the obligation that he had incurred upon that bond, and does not seem to be in excess of his liability, in view of the insolvency of the other sureties. This payment, therefore, could be credited only upon the amount due under the bond of 1881, and Cushing was not entitled to apply that payment to relieve him from liability to contribute to the payment of the amount due for the year 1880.

The only remaining question is as to the right of the plaintiffs to recover the costs and counsel fee of the unsuccessful defense of the action by the people of the state against plaintiffs' testator. No notice was given to the defendant to defend that action, or that would call upon him to contribute for the cost of its defense. If such notice had been given, and Cushing had notified the plaintiffs' testator that he elected not to contest the claim of the people, it would certainly be unjust to charge him with the cost of such a defense. It has been established that there was no defense to the claim; and, turning to the case in the court of appeals (People v. Lee, 104 N. Y. 441, 10 N. E. 884), it would seem that the principal defense insisted upon was that the bond of 1881 was intended to be prospective in its operation,

only, and that it did not cover existing deposits at the time it was executed, and would therefore be a defense for the advantage of those who had been sureties on the bonds of 1880 and 1881, and not on prior bonds. I can see no reason why the defendant Cushing should be charged with the costs of the unsuccessful defense of that action. The report of the referee, which states the facts found and the conclusions of law separately, contains no finding as to the costs and expenses of defending that action. Nor can I find in the record that there is any statement as to the amount of costs and counsel fee that plaintiffs' testator paid in the defense of the action.

It follows that the judgment appealed from must be modified by reducing the recovery to the amount of $1,737.77, with interest from May 6, 1881, and, as thus modified, affirmed, without costs of this appeal. All concur.