THE TOWN OF CICERO, Appellee, *vs.* LOUIS GRISKO *et al.* Appellants.

*Opinion filed April 23, 1909—Rehearing denied June 3, 1909.*

1. OFFICERS—*when town treasurer is responsible for loss of funds by failure of bank.* The fact that the town treasurer was directed by the board of trustees to cash tax anticipation warrants at a certain bank does not relieve the treasurer from responsibility for the loss of funds raised on such warrants and left by him in the bank until it failed, where the board did not direct the treasurer to keep the funds at such bank.

2. EVIDENCE—*when reports of town treasurer cannot be contradicted.* In an action on a town treasurer's bond to recover an amount reported by the treasurer as "balance in Lincoln Bank (now defunct) from sale of appropriation tax warrants," the sureties cannot contradict the report by showing that the greater part of such balance represented the anticipation warrants, and not cash which came into the treasurer's hands from their sale.

3. SAME—*what does not render treasurer's reports inadmissible.* The fact that the reports of a town treasurer were not made by him personally but by the town clerk, whom the treasurer employed to keep his accounts and make his reports, does not render them inadmissible in an action on the treasurer's bond nor lessen their binding effect upon the sureties, where, though the reports were

not signed by the treasurer, they were submitted to the board of trustees by his direction.

4. MUNICIPAL CORPORATIONS—*what does not show that tax anticipation warrants were void.* The fact that the town treasurer, instead of paying general town warrants by checking against the fund to his credit in the bank which had cashed tax anticipation warrants, pays them by checks on the banks where he has town funds on deposit, thus leaving the tax anticipation funds to accumulate to his credit on the books of the bank, does not show that the anticipation warrants were unnecessary and therefore void.

5. BONDS—*when sureties are liable for loss occurring prior to giving bond.* Where a town treasurer succeeds himself and gives a new bond the sureties on such bond are bound by his previous official reports, and if a shortage is found at the expiration of his term, the sureties on the new bond cannot relieve themselves from liability by showing that the loss occurred during the treasurer's term of office preceding the giving of the new bond.

6. The question of the allowance of interest in this case is controlled by the decision in *Town of Cicero* v. *Hall,* (*ante,* p. 160.)

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding.

RUNNELLS, BURRY & JOHNSTONE, for appellants:

The anticipation warrants were placed in the Lincoln Bank by the town of Cicero and did not constitute "moneys that may come into the hands" of the treasurer, and there is no liability on his bond for anything the town may have lost by the bank's failure. *Shreffler* v. *Nadelhoffer,* 133 Ill. 536; *Insurance Co.* v. *Johnson,* 120 id. 622; *Phillips* v. *Singer Manf. Co.* 88 id. 305; *Mix* v. *Singleton,* 86 id. 194; *Gilbert* v. *Yunk,* 214 id. 237.

The treasurer's surety is not estopped by the so-called reports from showing that the $48,000 of anticipation warrants was not money coming into the treasurer's hands. *Satterfield* v. *People,* 104 Ill. 448; *United States* v. *Boyd,* 5 How. 29; *Bissell* v. *Saxton,* 66 N. Y. 55; *Hatch* v. *Attleborough,* 97 Mass. 533; *State* v. *Smith,* 26 Mo. 226; *Broad*

v. *Paris,* 66 Tex. 119; *Mann* v. *Yazoo,* 31 Miss. 574; *State* v. *Newton,* 33 Ark. 276; *VanSeckel* v. *County,* 13 Neb. 103; *Munford* v. *Overseers,* 2 Rand. 314; *Craddock* v. *Turner,* 6 Leigh, 24; *Crawford* v. *Turk,* 24 Gratt. 176; *Lowry* v. *State,* 64 Ind. 421; *Ohning* v. *Evansville,* 66 id. 59.

A large part of the loss occurred before the Metropolitan Surety Company became surety. For such loss appellants are not liable. *Stern* v. *People,* 96 Ill. 475; *Bartlett* v. *Wheeler,* 195 id. 445.

JOHN J. SHERLOCK, and HIRAM T. GILBERT, for appellee:

When a treasurer, at the expiration of his term of office, makes a report showing the balance in his hands and thereupon succeeds himself and gives a new bond, the surety in the new bond cannot be permitted to show, in an action brought upon the bond at the expiration of the last term of office, that a shortage then found to exist arose from embezzlements, misappropriations or losses which actually occurred during a term of office prior to the one for which the bond sued upon was given. *Morley* v. *Metamora,* 78 Ill. 394; *Gage* v. *Chicago,* 95 id. 593.

The Metropolitan Surety Company is liable for the amount due from Grisko to the town of Cicero, even if the money, or a part of it, was actually lost during a year prior to that covered by the bond which it signed. *Morley* v. *Metamora,* 78 Ill. 394; *Chicago* v. *Gage,* 95 id. 593; *Cawley* v. *People,* 95 id. 294; *Longan* v. *Taylor,* 130 id. 412.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was brought by appellee, the town of Cicero, against Louis Grisko and the Metropolitan Surety Company, appellants, on the official bond of Grisko as supervisor of the town of Cicero and *ex-officio* treasurer of said town, to recover a sum of money which it was claimed

said Grisko received as such treasurer, belonging to the town of Cicero, and failed and refused to pay over to his successor in office. The cause was tried by the court without a jury and resulted in a judgment in favor of plaintiff for $55,288.80. On appeal by defendants to the Appellate Court for the First District the judgment was affirmed, and they have brought a further appeal to this court.

It was stipulated between the parties that Grisko was elected supervisor of the town of Cicero for one year in April, 1904; that he was re-elected to said office in April, 1905, and again in April, 1906, and that he continued to perform the duties of supervisor of said town until the 20th day of May, 1907, when his successor, who had been duly elected, qualified and entered upon the discharge of the duties of the office; that on the 17th day of April, 1906, Grisko as principal and the Metropolitan Surety Company as surety executed the bond sued on as the official bond of said Grisko, and that said bond was duly accepted and approved by the board of trustees of the town of Cicero on said April 17, 1906. It was further stipulated that it became and was the duty of said Grisko, on said 20th day of May, 1907, to pay over to his successor all moneys that had come into his hands as such supervisor which had not been paid out by him pursuant to law or resolution of the board of trustees or otherwise lawfully accounted for by him.

By the charter of the town of Cicero the corporate powers of the municipality are vested in a board of seven trustees. The supervisor of said town is *ex-officio* a member of the said board of trustees, and said board is by the charter given management and control of the finances and property belonging to the town. Section 5 of said charter reads as follows: "The supervisor of said town shall be *ex-officio* the treasurer of said town, and he shall receive and hold all moneys belonging to the town arising from general or special tax, special assessments, fines, penalties

or otherwise, and he shall, upon entering upon the duties of his office, execute a bond to the town of Cicero, in such sum and in such sureties as shall be determined by the board, conditioned that he will faithfully account for all moneys that may come into his hands and will pay the same over pursuant to the provisions of law or the orders or resolutions of the board, and that he will faithfully perform the duties of his office. It shall be his duty to keep a correct account of all moneys received and paid out by him, and, when required, to furnish from time to time to the board a statement of the moneys in his hands, and he shall receive such compensation as such treasurer as shall be allowed him by said board, not exceeding two per cent upon all moneys received by him."

The Metropolitan Surety Company was not surety for Grisko during his first and second terms of office, but became and was his surety from the commencement of his third term until he was succeeded by another man duly elected to that office.

On the trial five reports of Grisko as treasurer of the town of Cicero were introduced in evidence. The first report covered a period from January 1 to April 17, 1906, and showed a cash balance on hand of $97,716.31. The next report covered a period from April 17 to June 30, 1906, and showed a cash balance on hand of $62,153.52. The next report covered a period from July 1 to October 1, 1906, and showed a balance on hand of $68,096.10. The next report covered a period from October 1 to December 1, 1906, and contained two items as balance on hand, one of $33,973.30, the other of $58,672.79. The next and last report covered a period from January 1 to May 20, 1907, and showed a balance on hand of $57,819.05. Of this balance the report stated: "Balance in Lincoln Bank (now defunct) from sale of appropriation tax warrants, years 1905 and 1906, $53,490.91; balance cash on hand, $4328.14; total, $57,819.05." Grisko paid over to his suc-

cessor the $4328.14, but failed to pay any part of the remaining balance of $53,490.91.

On April 20, 1905, the board of trustees of the town of Cicero by unanimous vote, Grisko being present, adopted the following resolution:

"*Resolved,* That the finance committee be and they are hereby instructed to confer with banking firms and ascertain what rates of interest will be charged and what arrangement can be made for cashing tax warrants issued on the 1905 appropriation."

On the 26th of April, 1905, the finance committee reported to the board of trustees as follows: "That the committee on finance, to whom was referred the resolution of trustee Bills directing the finance committee to confer with banking firms to ascertain what rate of interest and what arrangements can be made for cashing warrants issued on 1905 appropriation, would respectfully report that we have conferred with various banks and find that William W. Weare & Co. agree to cash town warrants drawn against the 1905 appropriation and charge therefor at the rate of four and one-half per cent interest per annum for the money advanced. The finance committee recommend that the proposal of William W. Weare & Co. be accepted." Grisko was present when this report was made, and the record shows it was unanimously adopted. Thereafter, from time to time, several anticipation warrants were issued against the taxes of 1905. The first one ordered issued by the board of trustees after the report of the finance committee, was ordered issued by resolution of said board at the same meeting to which the finance committee made its report and after said report had been adopted. Said resolution was as follows:

"*Resolved,* That the president and town clerk be and they are hereby directed to issue a tax warrant on general funds in favor of William W. Weare & Co. for $4644.71, for the purpose of creating a fund from which to pay warrants drawn in accordance with reports and recommendations submitted by the finance committee to the board and accepted, said warrants to be redeemed by the treasurer upon receipt of the 1905 taxes from the collector."

The other warrants issued that year were issued in pursuance of similar resolutions adopted by the board. At a meeting of the board of trustees held January 18, 1906, the following resolution was adopted:

"*Resolved,* That the finance committe be and they are hereby directed to confer with the different banking associations for the purpose of ascertaining the lowest rates of interest that would be charged in cashing town of Cicero tax warrants issued upon the 1906 appropriation in anticipation of the collection of the general taxes for said year, said committee to make report at the next session."

Previous to this time William W. Weare & Co., who were conducting a private banking institution in the town of Cicero, sold and transferred the bank to a man by the name of Atkinson, who gave it the name Lincoln Bank and continued the business in the same place.

On February 1, 1906, the finance committee reported they had conferred with banking firms to arrange for cashing warrants issued against the taxes for 1906; that the Lincoln Bank agreed to cash them for four and one-half per cent interest, and they recommended its offer be accepted. This report was adopted by the board of trustees. Thereafter, during the year 1906, a number of anticipation warrants were issued to the Lincoln Bank in accordance with a resolution adopted by the board of trustees similar to the resolution above quoted, adopted in 1905. Grisko was present at all the meetings when it was decided by the board of trustees to issue anticipation warrants and when the resolutions were adopted directing them to be issued. In December, 1906, Atkinson and the Lincoln Bank went into bankruptcy, and the assets were found to be insufficient probably to pay any dividend whatever to creditors. Whether the bank was solvent when run by Weare & Co. does not appear, but it is apparent it was insolvent very soon after Atkinson took charge. The last report of Grisko states that there is a balance on hand in the "now defunct" Lincoln Bank, "from sale of appropriation tax warrants,

years 1905 and 1906, $53,490.91," and for this amount, with interest thereon, it is stipulated this suit is brought.

Appellants contend that the warrants issued in anticipation of taxes were not converted into cash and the cash deposited in the bank to the credit of Grisko, but that by direction of the board of trustees said warrants were merely placed with the bank as custodian; also, that if the warrants were cashed by the bank and the proceeds deposited therein to the credit of Grisko it was done by order and direction of the board of trustees, and that there can be no liability of the surety on account of the failure of the bank which had been selected by the board of trustees as the depositary. The facts proven do not support either of these theories. The resolutions adopted by the board instructed the finance committee to ascertain what arrangements could be made for "cashing tax warrants." The committee reported that the bank selected had agreed to "cash town warrants" drawn in anticipation of taxes and charge therefor four and one-half per cent interest per annum. The resolutions under which the warrants were issued directed their issuance in favor of the bank selected, "for the purpose of creating a fund from which to pay warrants drawn," etc. The anticipation warrants, when issued, were delivered to Grisko and by him taken and delivered to the bank. Thereafter general warrants issued for the current expenses of the municipality were stamped on the face, "Payable at the Weare & Co. or Lincoln Bank." Grisko is an illiterate man, and employed Timothy Buckley, the town clerk, to keep his books and accounts and make out his reports. On one or two occasions Buckley went with Grisko to the bank when warrants were deposited. Grisko was given a bank pass-book by the bank, and when warrants were delivered by him he was given credit in his pass-book for the face of the warrants, the same as if he had deposited that amount of cash, and these amounts were carried on the books of the bank in the same manner

that deposits of cash were carried. There was no direction given by the board of trustees to Grisko as to where he should deposit the cash received from the bank on the war-' rants. He was only directed to obtain the cash on them from the bank and was left at liberty to deposit where he chose. The evidence certainly tended to support the finding that Grisko received the cash on the warrants and selected his depositary, and the judgment of the municipal court having been affirmed by the Appellate Court, we would not be authorized to reverse it on the ground that in this respect there was no evidence tending to support it.

It is also contended by appellants that the reports made by Grisko to the board of trustees were not admissible in evidence, and that if admissible they were not binding on the surety. The reports were made out by Buckley, the town clerk, who was employed by Grisko by the year to keep his books and accounts and make his reports. They were not signed by Grisko but they were presented to the board of trustees by direction of Grisko. Grisko testified he did not examine the reports and would not have understood them if he had done so, but he did not deny that they were made by Buckley and presented to the board of trustees by his direction. We think they were properly admitted in evidence. The only respect in which it is claimed appellants should have been allowed to contradict or explain the last report is, that they should have been allowed to show that in the neighborhood of $50,000 of the balance reported to be in the defunct Lincoln Bank was anticipation warrants, and not cash that came into the hands of Grisko. It is not sought to be shown that by a mistake Grisko had failed to take credit in his report for authorized payments made before making up his report, but the complaint is that the surety should have been permitted to show that the greater portion of the balance did not represent cash, but anticipation warrants. What we have before said disposes of that question.

It is also contended that the bank was insolvent before the Metropolitan Surety Company became surety for Grisko and that the greater portion of the loss occurred before that time. This question has been settled contrary to appellant's contention. *Morley* v. *Town of Metamora,* 78 Ill. 394; *Cowden* v. *Trustees of Schools,* 235 id. 604; *City of Chicago* v. *Gage,* 95 id. 593.

It is contended that there was no necessity for issuing anticipation warrants, and that said warrants were therefore illegal and void. The statute conferred authority upon the town to issue such warrants to defray the ordinary and necessary expenses of its government if there was not sufficient money in the treasury for that purpose. In addition to the presumption of law in favor of the proposition that the board acted legally in the discharge of its powers and duties, there was evidence tending to show that the condition of the treasury justified the action of the board. Nothing was offered to overcome it. It is true, the fund produced by these warrants was allowed to accumulate in the bank, and general warrants issued for the ordinary running expenses of the town were paid by Grisko by checks drawn on two banks in the city of Chicago where he carried large accounts. As treasurer of the town of Cicero he was custodian of the funds derived from general taxation and appropriated to the various purposes of the municipal government, and also special assessments, of which there were a great many. He deposited no other fund with Weare & Co. or the Lincoln Bank but that derived from the anticipation warrants, except one deposit of $5000 and one of $399.95. Against this account in this bank he checked out only $250. He appears not to have checked against this fund to pay general warrants issued for municipal expenses. These warrants were stamped on the face payable at the bank of Weare & Co. or the Lincoln Bank. The proof shows warrants were presented to and paid by the bank, and after cashing a number of them Grisko would

give the bank a check for the total amount drawn on one of the Chicago banks. Why he did not draw checks against his deposit with Weare & Co. and the Lincoln Bank to pay these warrants is not satisfactorily explained. The only attempted explanation is the testimony of Grisko himself. He testified he did not know he could draw checks against this fund. After having participated in the meetings of the board of trustees at which the warrants were ordered issued for the purpose of procuring a fund to pay general warrants issued for the ordinary expenses this explanation seems too unreasonable to deserve consideration.

The court did not err in refusing propositions of law requested by appellants. It is claimed those held by the court are inconsistent with the judgment rendered. It is probably true that some of them, standing alone, are incomplete, but considered all together they are not inconsistent with the judgment.

It is also contended appellants should have been allowed a credit or set-off of $6858.84 on account of general town warrants paid by the bank just before its failure and for which it is said the bank has not been reimbursed. These warrants were in the bank's hands at the time the bankruptcy proceedings were instituted and are now in the hands of the assignee in bankruptcy. They were not paid by the bank out of the funds to the credit of Grisko but were paid with the bank's own money. It may be that the town of Cicero is liable to the assignee in bankruptcy for the amount of these warrants if the bank has not been reimbursed for their payment, but no right of set-off exists in favor of appellants. No demand was necessary in this case before instituting suit.

The trial court allowed interest from May 20, 1907, the date on which Grisko retired from office. This, it is urged, was erroneous. We are of opinion the ruling in this respect was correct. *Town of Cicero* v. *Hall,* (*ante,* p. 160.)

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*