(156 App. Div. 504.)

## YAWGER v. AMERICAN SURETY CO.

(Supreme Court, Appellate Division, First Department. May 2, 1913.)

PRINCIPAL AND SURETY (§ 194*)—SURETIES ON SUCCESSIVE BONDS—CONTRIBUTION.

> Plaintiff, surety on the bond of a town treasurer for his second term, states a case for contribution from defendant surety on his bond for the preceding term, at the end of which there was no accounting, because of his being his own successor, by alleging it paid a judgment, holding it liable not only for the moneys he had deposited in a bank during his second term, but for those he had deposited there in his first term, and not withdrawn, and that the bank, which was adjudged bankrupt during the second term, was hopelessly insolvent during the first term.
>
> [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 605–623; Dec. Dig. § 194.*]

Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Special Term, New York County.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by John F. Yawger, receiver of the Metropolitan Surety Company, against the American Surety Company. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed, with leave to answer.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

Edward R. Finch, of New York City (John Burlinson Coleman, of New York City, of counsel), for appellant.

Barber, McGuire & Ehlermann, of New York City (Carl Ehlermann, Jr., of New York City, of counsel), for respondent.

CLARKE, J. The action is brought by the receiver of the Metropolitan Surety Company. The complaint alleges that on April 4, 1905, one Grisko was elected supervisor of the town of Cicero, Ill., for the term of one year until his successor should be elected and qualified; that under the charter of said town the supervisor was ex officio the treasurer and required to give a bond, conditioned that he will faithfully account for all moneys that may come into his hands, etc.; that on the 25th of April, 1905, Grisko, as principal, and the defendant, American Surety Company, as surety, duly executed and delivered to said town a bond in the sum of $100,000 upon the condition that the said Grisko should faithfully account for all moneys that might come into his hands as such supervisor, and pay over the same pursuant to the provisions of law, or the order or resolution of the board of trustees of said town, and should faithfully perform the duties of his office to the best of his skill and abilities; that between the 25th of April, 1905, and the 16th day of April, 1906, Grisko, as treasurer, deposited in a private banking institution, called the Lincoln Bank, a certain amount set forth, and during said period drew out a certain amount set forth; upon the 16th of April, 1906, he had on deposit in the account in said bank a balance of funds of said town of Cicero amounting to $41,529.78; that on said day, and for several months prior thereto, the said private banking institution operated as the Lincoln Bank, and the said William J. Atkinson, who was the sole owner and proprietor thereof, were hopelessly insolvent; that on April 4, 1906, Grisko was again elected supervisor for the term of one year until his successor should be elected and should have qualified; that on the 16th of April, 1906, Grisko, as principal, and the Metropolitan Surety Company, as surety, executed a bond similar in all respects to the one heretofore referred to given by the American Surety Company for the preceding year; that Grisko acted as supervisor during the term specified in said bond until he retired from office on or about the 20th day of May, 1907, on which date his successor had been duly elected qualified; that the bond given by the Metropolitan Surety Company was not given, nor accepted, as a compromise with the town of the claim against the American Surety Company on its bond, and that said bond of the American Surety Company was not surrendered up or canceled, and remained in full force and effect; that at the time of the making and delivery of the Metropolitan Surety Company's bond neither said company, nor any

of its officers, knew that the Lincoln Bank and Atkinson were insolvent, or that the funds belonging to the said town had been deposited in the said private bank by Grisko; that on April 16, 1906, upon the said Grisko qualifying as supervisor for the year commencing April, 1906, he did not then, nor thereafter, withdraw from the said bank any of the balance, amounting to $41,529.78, which he had on deposit at the conclusion of his previous term of office as supervisor, nor could the said balance have been withdrawn on account of the insolvency of said private banking institution; that said Grisko, for the term ending April 16, 1906, did not and could not, on account of the aforesaid insolvency of the said private banking institution, pay over to himself, as supervisor and ex officio treasurer for the year commencing April 16, 1906, said balance; that Grisko, from April 16, 1906, to October 23, 1906, deposited $12,061.13 in said bank and drew out $100, and that on the 23d of October, 1906, he had, as treasurer of the said town, on deposit in said bank a balance of money belonging to the town of $53,490.91, which included the balance of $41,529.78 which he had on deposit on the 16th of April, 1906, as hereinbefore set forth; that the said Grisko, as supervisor, for his term of office commencing April 16, 1906, continued and operated the aforesaid account in the said Lincoln Bank in the same manner as he had during his previous term as supervisor, as herein set forth; on or about December 17, 1906, proceedings in bankruptcy were taken against Atkinson, operating under the name of Lincoln Bank, so that he was thereafter adjudicated a bankrupt, and by reason of his insolvency and bankruptcy none of the said balance was ever paid over or returned to Grisko or the town; that the said Grisko failed and neglected to account for said $53,490.91 to the town, and failed to pay over said sum to his successor as supervisor, as required by law; that as a result of such failure the town prosecuted an action against Grisko and the Metropolitan Surety Company, as surety, for said sum of money, including the $41,529.78 which Grisko had on deposit at the conclusion of his first term of office, and that a judgment was rendered in favor of the town, which, on appeal to the Appellate Court and the Supreme Court of Illinois, was affirmed (240 Ill. 220, 88 N. E. 478); that as a result of said judgment the plaintiff, pursuant to an order of the New York Supreme Court, paid to the town of Cicero the sum of $58,000; no part of which has been returned, except the sum of $2,401.65 paid by the trustee in bankruptcy of Atkinson; that on account of the payment of the said sum of $58,000 by the plaintiff to the town of Cicero the said town, before the commencement of this action, by an instrument in writing, duly assigned, transferred, and set over to the plaintiff the aforesaid bond executed by the defendant and Grisko, together with any and all claims or causes of action arising under or by virtue of the said bond against the American Surety Company; that the said Grisko is a nonresident of this state, and is now and ever since the failure of the said Lincoln Bank has been insolvent and unable to make good to the plaintiff the whole or any part of the said $58,000 paid by the plaintiff as aforesaid.

The complaint alleges the due demand and refusal and an order authorizing him to sue, and demands judgment as follows: That this

court inquire into and take proof of the amount paid by the plaintiff upon the said claim, and that the defendant be adjudged and ordered to contribute to the plaintiff the sum of $41,529.78, together with interest, its proportionate, ratable share of the claim so paid by the plaintiff, or such other sum as this court may decide to be the proportionate, ratable share of the claim so paid by the plaintiff; second, that this plaintiff may have such other and further relief as to the court may seem just and proper.

To this complaint the defendant demurred, upon the ground, first, that it appears upon the face of the complaint that alleged causes of action have been improperly united, in that it appears from the allegation that the complainant has joined inconsistent causes of action in subrogation, contribution, and assignment; second, that the complaint does not state facts sufficient to constitute a cause of action. The Special Term sustained the demurrer on the latter ground, stating in its opinion:

"The plaintiff, to make out a good cause of action, must allege that the loss, or a portion of it, occurred during Grisko's first term of office, namely, during the period for which the defendant was his surety. There is no such allegation. * * * Non constat but that Grisko was then solvent and had other funds from which he could have made up any deficiency for which he was liable."

In brief, this is an action by the surety upon an official's bond for his second term, which has had to pay a judgment for the default of its principal, to recover against the surety upon his bond for his first term for so much of the sum recovered against it as was not accounted for by the principal during his first term, when the defendant was his surety.

The respondent cites several cases in the attempt to show that the second surety, to wit, the plaintiff, was not bound for the acts or defaults of the principal prior to the term for which it gave its bond; but the difficulty with that argument is that the plaintiff most strenuously contended therefor and was beaten. In Town of Cicero v. Grisko and the Metropolitan Surety Co., 240 Ill. 220, 88 N. E. 478, it raised the point that a large part of the loss occurred before it (the Metropolitan Surety Company) became surety, and for such loss it was not liable, but the court said:

"It is also contended that the bank was insolvent before the Metropolitan Surety Company became surety of Grisko, and that the greater portion of the loss occurred before that time. This question has been settled contrary to the appellant's contention"—citing cases.

The leading case cited, Morley v. Metamora, 78 Ill. 394, 20 Am. Rep. 266, holds that, where a supervisor is elected his own successor, and gives a new bond, the sureties are liable on such bond for any amount which appears to have been in the hands of such supervisor belonging to the town at the end of the preceding official term.

"It was as much his duty to account for whatever funds were in his hands at the end of the first year as it was to account for whatever should be received during the second year. The law makes the sureties responsible for any default in that regard. There could be no action maintained against the sureties on the first bond at the expiration of that year; for there was

no one who could make a demand for the money the supervisor reported as having in his hands, so as to establish a default."

The consequence is that the Metropolitan Surety Company was held liable on its bond for the amount which ought to have been in the hands of Grisko at the end of the term covered by the bond of the American Surety Company. Therefore the bonds did overlap. The argument advanced by respondent would be very forceful to let out the second surety, but the second surety was not let out when it made the same argument.

There is no case precisely like this presented in the briefs. The doctrine of contribution rests, not upon the contract, but upon the principle that equality of burden as to common right is equity. This is illustrated by Barnes v. Cushing, 168 N. Y. 542, 61 N. E. 902, and when it came back for a new trial in 71 App. Div. 366, 75 N. Y. Supp. 953. This was a case where there were cosureties extending over one period, and then a second period, in which one of these cosureties had refused to go on a further bond. A default having occurred, and it having been made to appear that a portion of the balance due had accrued during the period of the first bond, although the recovery had been had against the obligors on the second bond, a recovery was sustained by the surety who paid the judgment against his cosurety on the first bond for the amount for which the principal was accountable while that bond was in existence; but there there was a joint obligation over the same period, and the general rule in regard to contribution was applicable, as stated by Story (Eq. Jur. § 495):

"It matters not, in case of a debt, whether the sureties are jointly and severally bound or only severally, or whether their surety arises under the same obligation or instrument or under divers obligations and instruments, if all the instruments are for the same identical debt."

We lately considered this question of contribution in Hard v. Mingle, 141 App. Div. 170, 126 N. Y. Supp. 51, affirmed 206 N. Y. 179, 99 N. E. 542.

It seems to me that by the decision of the Illinois court these two sureties were, in effect, cosureties for a single debt. The Metropolitan Company was held upon the theory that $41,529.78 was in Grisko's hands at the time that it gave its bond. Events showed that it was not, although it ought to have been, and the complaint alleges that the precise fact, namely, the insolvency of the depositary, upon which was based the judgment against the plaintiff for the full amount of $58,000, was in existence and had caused $41,529.78 of the deficiency found by the judgment during the period covered by the defendant's bond. If an accounting had been called for at the end of the first term, if a demand had been made at the end of that term, the fact of the deficiency would have been then shown, and there would have been no doubt that the defendant would have been responsible. That there was no accounting was due to the fact that the supervisor succeeded himself.

In United States v. Irving, 1 How. 250, 11 L. Ed. 120, the term of Swartmout, as collector of customs at New York, commenced on March 29, 1830, for a term of four years, and on the 22d of June,

1830, he gave a bond for the faithful discharge of his duties with several sureties, one of whom was Henry Eckford. Swartmout's third term commenced on March 29, 1834. Eckford was not one of the sureties on the new bond. The United States Supreme Court said:

"On March 29, 1834, * * * a large apparent balance was due to the government by him [Swartmout]. * * * Did it arise from a misapplication of the public money during the preceding term? If so, the sureties of the preceding term are liable for the amount thus misapplied."

The fact that everybody was in ignorance cannot exonerate the defendant from its obligation, which the plaintiff has paid under stress of the judgment. I think there is enough in this complaint to put defendant to its answer.

The interlocutory judgment should be reversed and the demurrer overruled, with costs and disbursements to the appellant, with leave to the respondent to withdraw the same and plead over on payment thereof.

McLAUGHLIN and LAUGHLIN, JJ., concur.

INGRAHAM, P. J. (dissenting). One Grisko was duly elected to the office of supervisor of the town of Cicero, in the county of Cook, state of Illinois, on the 4th day of April, 1905, and as such supervisor he gave to the town of Cicero a bond, as principal, with the defendant, as surety, in the penal sum of $100,000. The condition of the obligation was that if the said Louis Grisko should faithfully account for all moneys that might come into his hands as such supervisor, and pay over the same pursuant to the provisions of law, or the order or resolution of the board of trustees of the town of Cicero, and should faithfully perform the duties of this obligation to the best of his skill and ability, then the obligation was to be void; otherwise to remain in full force and effect.

The complaint alleges: That the town of Cicero was a municipal corporation organized and existing under and by virtue of the laws of the state of Illinois, and by its charter it was provided that the supervisor should be ex officio treasurer of the said town, and should receive and hold all moneys belonging to the town arising from general or special tax, special assessments, fines, penalties, or otherwise, and that he should, upon entering upon the duties of his office, execute a bond to the town of Cicero in such amounts and with such sureties as should be determined by the board. It was also his duty to keep a correct account of such moneys received and paid out by him, and he was required to furnish from time to time to the board a statement of the moneys in his hands. That Grisko was elected supervisor of the said town on the 4th day of April, 1905, for the term of one year and until his successor should be elected and qualify. That said Grisko as principal, with the defendant as surety, executed and delivered to the town the bond above mentioned and duly qualified as such supervisor for the term commencing in the month of April, 1905, and entered upon the discharge of his official duties as such and continued in the exercise of his duties for the full term mentioned in such bond. That there then existed a private banking institution

owned and operated by one Atkinson under the name or style of the Lincoln Bank, in which institution the supervisor deposited money received by him in his official capacity, so that on the 16th of April, 1906, he had on deposit in the said bank a balance of the funds of the town of Cicero amounting to $41,529.78. That on the said 16th of April, 1906, and for several months prior thereto, the said banking institution operated as the Lincoln Bank and the said Atkinson were hopelessly insolvent. That on or about the 4th day of April, 1906, the said Grisko was re-elected supervisor of the said town of Cicero for the following year, and that on the 16th of April, 1906, said Grisko, as principal, and the plaintiff, as surety, executed and delivered to the said town of Cicero a bond similar in all respects to the bond executed by the defendant, a copy of which is also annexed to the complaint. That after the last-mentioned bond had been executed and delivered, as aforesaid, Grisko acted as supervisor of the said town until he retired from office on or about the 20th of May, 1907, on which date his successor qualified by filing his bond as supervisor. That on the 16th of April, 1906, when the said Grisko qualified as supervisor for the ensuing year, he did not then or thereafter withdraw from the said Lincoln Bank any of the aforesaid balance of $41,529.78, which he had on deposit in the said bank as supervisor and ex officio treasurer of the town of Cicero; nor could the said balance have been withdrawn on account of the insolvency of said private banking institution as therein set forth. That the said Grisko, after the 16th of April, 1906, and until the 23d of October, 1906, deposited various sums of money belonging to the town of Cicero in the said Lincoln Bank and withdrew from the said Lincoln Bank the sum of $100. That on the 23d of October, 1906, the said Grisko, as supervisor and ex officio treasurer of the town of Cicero, had on deposit in the said Lincoln Bank a balance belonging to the said town of $53,490.91, which included the $41,529.78 which he had on deposit on the 16th of April, 1906. That on the 17th of December, 1906, Atkinson, operating under the name of the Lincoln Bank, was adjudicated a bankrupt, and in consequence thereof none of the balance, amounting to $53,490.91, on deposit with the said Lincoln Bank was ever paid over or returned to Grisko, or to the town of Cicero, and Grisko failed and neglected to account for the said sum of money to the town of Cicero, or to pay over the same to his successor. That in consequence thereof the town of Cicero instituted an action in the courts of the state of Illinois to recover the amount due from Grisko to the town of Cicero, which resulted in a judgment in favor of the town against the plaintiff, which the plaintiff subsequently paid. This action was instituted by the plaintiff, the surety on the second bond for the year commencing in April, 1906, against the defendant, the surety on the first bond for the year commencing in April, 1905. The question presented is whether, on the allegations of this complaint, the surety on the first bond is liable to the surety on the second bond for the amount that it was required to pay because of the failure of Grisko to account for the moneys in his hands belonging to the town on the election of his successor in May, 1907.

Grisko wàs supervisor and ex officio treasurer of this town of Cicero for the year commencing April 4, 1905, and until his successor was appointed and duly qualified, and the defendant was surety upon the bond that he gave under the provisions of the charter of the town. The bond given by the plaintiff was to be void if Grisko should faithfully account for all moneys that came into his hands as such supervisor and pay over the same pursuant to the provisions of law, or the order or resolution of the board of trustees of the town of Cicero, and should faithfully perform the duties of his office to the best of his skill and ability. If this condition was complied with, the bond was void; and to entitle the plaintiff to recover it must appear that the principal, Grisko, failed to fulfill the conditions of this bond. When, in April, 1906, he was duly elected to succeed himself as super-visor for the ensuing year, he had on deposit in this bank a certain sum of money which he had received as supervisor and treasurer, and for which he was liable to account to the town. He had not up to that time failed to account for any money that had come into his hands as such supervisor, or failed to pay over the same according to the provisions of law, or order or resolution of the board of trustees of the town; nor, so far as appears, had he failed to perform his duties to the best of his skill and ability. When the electors of the town re-elected Grisko as supervisor, they elected him to require an accounting from himself for the money that he had on hand, and he, in pursuance of the authority thus conferred upon him, took over and continued the account with this Lincoln Bank of the moneys that he had there on deposit to his credit as supervisor. So far as appears, and I think from the statements of the complaint the inference is justified, that money on deposit was treated by him as the money of the town, and continued into his new term. There is no allegation of bad faith on the part of Grisko; no allegation that he had failed to account for the money; no allegation that he had any knowledge that the bank was insolvent or the money in jeopardy; nothing but the fact that the bank was insolvent. And there was nothing by which it would appear as to how largely insolvent it was, or how much money, if it had been then drawn out, or attempted to have been drawn out, would have been lost to the town. The bank was not adjudicated a bankrupt until the 17th of December, 1906, eight months after the re-election of Grisko, and there certainly can be no presumption, from the mere fact of general insolvency, that if Grisko had been compelled to account to another successor all or any any portion of the money on deposit would have been lost to the town in consequence of the insolvency of the bank. Apparently it continued to do business for eight months after Grisko's re-election, and there is nothing to show that if the supervisor had drawn checks upon the account they would not have been paid, except the allegation of a conclusion that the money could not have been drawn out on account of the insolvency of the institution. On these allegations, therefore, I do not see how it can be said that the condition of this obligation was broken, so that the defendant became liable. Certainly, if Grisko's successor had been appointed, and he had turned over to his successor this ac-

count in the bank as money in his hands belonging to the town, and his successor had accepted the transfer of that account as a transfer of the money belonging to the town, and then it had been lost by the subsequent failure of the bank eight months after Grisko's successor had been elected, there would have been no obligation as against the defendant, and no action upon the bond could have been maintained. It seems to me that upon the allegations of the complaint the same result must follow from Grisko's continuing the amount in the bank and accepting it as a transfer of the town's money to himself as his own successor, and giving a new bond, with the plaintiff as surety, for the faithful accounting of money that he had in his hands at that time, and that he should thereafter receive.

When the town sued the plaintiff (see 240 Ill. 220, 88 N. E. 478), it was held that the plaintiff was liable, as surety, for Grisko upon his failure to pay over to his successor all moneys that had come into his hands as such supervisor which had not been paid out by him pursuant to the provisions of law; or order or resolution of the board of trustees, or otherwise lawfully accounted for by him, and that the amount for which he was liable upon the qualification of his successor in 1907 was the amount that he had on deposit in this Lincoln Bank. To justify that judgment it is apparent that Grisko must have been chargeable with the amount on deposit in the Lincoln Bank at the end of his year of service following his election in April, 1905; and it apparently was based upon this failure to account for the money in his possession, namely, the amount on deposit in the Lincoln Bank, that the plaintiff was held to have violated the condition of the bond it gave in April, 1906. But the liability of the defendant here depends upon the terms and conditions of the obligation that it gave, and as long as the condition upon which its liability depended was not broken the defendant was not responsible.

I think, therefore, that no cause of action was alleged, and that the demurrer was properly sustained.

DOWLING, J., concurs.